## THE PITTSBURGH, CINCINNATI AND ST. LOUIS R. W. CO. v. HOLLOWELL.

COMMON CARRIER.— *Contract.*— *Consideration.*— *Complaint for Failure to Receive and Carry.*—A complaint against a railroad company alleged a breach, by the defendant, of an agreement between the plaintiff and the defendant, whereby the latter agreed to ship certain live-stock which the plaintiff agreed, and attempted, to deliver to the defendant for shipment.

*Held*, that the agreement was based upon a sufficient consideration.

SAME.—*Rule for Non-Delivery not the same as for Failure to Receive.*—The rule of law, as to the liability of a common carrier for a failure to deliver goods which have been entrusted to it for transportation and delivery, is not applicable, with the same degree of strictness, for unavoidable delay in receiving and carrying.

SAME.—*Answer.—Insurrection.—Riot.—Strike.*—In an action against a common carrier, for delay in receiving and carrying live-stock which it had agreed to receive and carry, the defendant answered that such delay was caused, not by the negligence of the defendant or its agents, but solely by reason of the fact, that, though the defendant was prepared to receive and carry the goods, an armed multitude of people in rebellion against the laws of the State, which neither the defendant nor the civil authority of the State was able to control, by force and arms drove away the engineers, and firemen operating the defendant's engines and cars, and thus prevented the defendant from receiving and carrying the plaintiff's live-stock.

*Held*, on demurrer, that the answer is sufficient.

SAME.—*Reply.*—A reply, in such case, alleging that the cause of such pretended insurrection was an unjust and oppressive reduction by the defendant of the wages of its employees, which induced them to strike and refuse to work, and to assemble in a peaceable body to demand a restoration of their former rate of wages, but without offering any resistance to the civil authorities, is insufficient.

SAME.—A reply alleging that such alleged insurrection was composed solely of employees of the defendant, who, peaceably and without arms or violence, and on account of an unjust and oppressive reduction by the defendant of their wages, refused to continue in the defendant's employ until their former rate of wages was restored, and who had peaceably assembled in a small body to petition therefor, is insufficient. BIDDLE, J., dissents on this point.

From the Madison Circuit Court.

*N. O. Ross* and *H. D. Thompson*, for appellant.

*H. C. Allen* and *C. L. Henry* for appellee.

BIDDLE, J.—Complaint by appellee, as a shipper, against the appellant, as a common carrier, to recover damages for delay in receiving and transporting live-stock. The complaint originally contained three paragraphs, but the second one was withdrawn; the case, therefore, stands upon the first and third paragraphs. A demurrer, for the alleged want of facts, was overruled to each paragraph of the complaint. The appellant answered by a general denial, and six special paragraphs, numbered from one to seven inclusive. Demurrers were overruled to the second, third, fourth, fifth, sixth and seventh paragraphs. Reply in three paragraphs, to the second and third of which demurrers were overruled. Trial by the court, and finding

for the appellee. Motion for a new trial overruled. The appellant excepted to the various rulings of the court. Judgment on the finding, and appeal.

The second paragraph of answer was in the following words :

"For a second and further answer to the first and third paragraphs of complaint, the defendant says, that, during the entire time of the delay in shipping the plaintiff's stock, as charged in said paragraphs of the complaint, a portion of the citizens of the State of Indiana were in rebellion against the laws and government of said State, and assembled together along the line of the defendant's railroad, over which it was necessary to pass to carry said stock to the place of its destination, to wit, East Liberty, Pennsylvania, with clubs, stones, pistols and other dangerous weapons, and with the use of force, threats and intimidation, drove the defendant's locomotive engineers, firemen, and other servants necessary to run a train, away from the defendant's trains, then ready and prepared to transport the plaintiff's hogs at the time agreed on ; and that said persons, so in open rebellion and armed as aforesaid, during all said delay, to wit, from said 26th day of December, 1873, until said 3d day of January, 1874, continued to assemble themselves together along the line of railroad as aforesaid, and with force and violence drove away from the engines and trains of defendant the engineers and firemen employed by the defendant to operate its trains ; and that the persons so in rebellion, and resisting the laws of the State of Indiana, and resisting the defendant in the lawful operations of its said railroad, were so numerous that the civil authorities of the State were unable to resist and suppress them.; and that it became necessary for the Governor of the State of Indiana to call out the military force of the State to suppress them ; and that he did call out said military force, and suppressed said rebellion, on the 2d day of January, 1874 ; and that the

defendant, as soon thereafter as it was possible to do so, to wit, on the 3d day of January, 1874, sent a proper train of cars to where said stock was to be reshipped from, and without further delay transported said stock to their place of destination. Wherefore the defendant says, it was prevented by the enemies of the government, in open rebellion, from transporting the plaintiff's hogs sooner than it did transport them as alleged in the complaint."

The third, fifth, sixth and seventh paragraphs of answer set up substantially the same facts as those averred in the second. The fourth paragraph was withdrawn.

The second paragraph of reply was pleaded to the second, third, fifth, sixth and seventh paragraphs of answer. It averred that the pretended rebellion, set up in the defendant's answer, was caused by a reduction of the wages of the engineers, firemen and employees of the defendant, which induced them to strike, or refuse to go to work; that they assembled peacefully, in a body, and demanded their wages restored, but neither offered nor threatened any resistance to the civil authorities of the State.

The third paragraph of reply is in the following words:

"And for third and further reply to the second, third, fifth, sixth and seventh paragraphs of defendant's answer, he says, that all the obstruction and disturbance that occurred, as set out in said answer, were caused by an unjust and oppressive order of said defendant, in cutting down and reducing the wages of her engineers, firemen and employees, and thus causing the said employees to refuse to work, and become sullen and turbulent; and that said employees assembled in a small body, and demanded a revocation of said order, and a restoration of their former wages; and that none but the employees of this defendant engaged in any way in said disturbance." .

Upon the issues thus settled, the case was tried.

The only objection made to the complaint is, that it does not aver any consideration for the contract to ship the

stock, but it shows the relation of common carrier and shipper between the parties, and an agreement on the part of the appellee to furnish to appellant stock to be shipped, and on the part of the appellant to ship the stock, and that the stock was furnished at the proper depots, and a part of it loaded upon the appellant's cars. These facts show the contract, and a sufficient consideration to support it. We think the complaint is good. *The Pittsburgh, etc., R. W. Co.* v. *Morton*, 61 Ind. 539.

The appellee insists, that it is immaterial whether his second and third replies to the appellant's answer are good or not, because, as he also insists, the paragraphs of answer to which they were pleaded, are not good.

It is generally held, that, to excuse a common carrier, the loss must happen from a strictly superior force, not merely human, unless it be the public enemy, the *vis major* of the civil law. Redfield Carriers, sec. 25. But the carrier will be exempted from losses caused by public enemies, as by a hostile invasion and seizure or destruction of property, or by the capture of the carrier's vessel and cargo on the high seas by the men of war or commissioned privateers of the nations with which we are in open war.

" To make a public enemy, the government of the foreign country must be at war with the United States; for a mob, how numerous soever it may be, or robbers, whoever they may be, are never considered as a public enemy." Bouv. Dict., tit. Public Enemy.

Rioters and robbers and thieves and insurrectionists, though at war with social order, are not in this sense classed as public enemies. Though the force by which the carrier be opposed be never so great, as if an irresistible multitude of people should rob him, he is nevertheless chargeable.

Pirates upon the high seas, however, stand as an exception to this rule. They are considered the enemies of all civilized nations, and indeed of the human race, whose

depredations upon a common carrier will excuse him from liability. Edwards Bailments, 463. The carrier is answerable for loss caused by the irresistible force and violence of robbers and mobs; and thieves, rioters, insurgents, who are merely private depredators, are not considered public enemies in the legal sense of the term. Angell Carriers, secs. 191, 200.

It has long been settled in England, that a common carrier is responsible for all losses, except such as are occasioned (to speak in the quaint language of the common law) "by the act of God or the King's enemies." The true reason is given by SIR WILLIAM JONES, namely, that the carrier's engagement is a public employment, which gives him easy facilities, and affords great temptations, to combine secretly with robbers to the infinite mischief of commerce, and extreme inconvenience to society. To which reasons may be added, that, when goods are delivered to a carrier, they are no longer under the control of the owner. If they should be lost by the grossest carelessness of the carrier, or negligence and dishonesty of his servants, or be stolen by thieves in collusion with them, the owner would be unable to prove the facts, except by those who had committed the wrong, and who would thus be strongly tempted to excuse their master as well as themselves. Angell Carriers, secs. 149, 150, 191, 200.

The law against common carriers, where the goods are lost, seems severe, but its severity is necessary to the security of property, and the protection of commerce, and is founded in experience and the deepest wisdom.

The first case we find reported was under CHARLES II. It is this : The carrier loaded his vessel in the river Thames, for Cadiz, in Spain. She was manned by five sailors, which was sufficient to sail her. In the night-time came eleven

persons, under pretence of pressing seamen for the King's service, and by force seized the sailors and took the goods. The case was compounded upon a final decision, but "it was agreed on all hands that the master should have answered, in case there had been any default in him or his mariners." *Morse* v. *Slue*, Ventris, 190.

The first case reported in this State is *Walpole* v. *Bridges*, 5 Blackf. 222, wherein DEWEY, J., gives a construction to the phrase, "Act of God," but does not define a public enemy. In this case, it was held that the exception in a bill of lading, " unavoidable dangers and accidents of the road only excepted," did not restrict the general liability of a common carrier. The following cases support this view more or less directly : *Proprietors of the Trent Navigation* v. *Wood*, 3 Esp. 127 ; *Lane* v. *Cotton*, 1 Ld. Raym. 646, 652 ; *Bell* v. *Reed*, 4 Binney, 127 ; *Murphy* v. *Staton*, 3 Munf. 239 ; *Ewart* v. *Strect*, 2 Bailey, 157 ; *McArthur* v. *Sears*, 21 Wend. 190 ; *Blackstock* v. *The New York and Erie R. R. Co.*, 1 Bosworth, 77.

But the strict rule contended for by the appellee is applicable to common carriers only after they have received the goods for transportation, and fail to deliver them at their destination, or when they are lost. In cases like the present, for delay in receiving and carrying the goods, the carrier is not an insurer, and is bound only by the general rule of liability for a breach of his contract, or of his public duty as a carrier, and may be excused for delay in receiving the goods, or in transporting them after they have been received, whenever the delay is necessarily caused by unforeseen disaster which human prudence can not provide against, or by accident not caused by the negligence of the carrier, or by thieves and robbers, or an uncontrollable mob.

Under this view, we think the second, third, fifth, sixth and seventh paragraphs of the appellant's answer are each

sufficient. *The Pittsburgh, etc., R. W. Co.* v. *Morton,* 61 Ind. 539.

The appellant insists, that the second and third paragraphs of the reply to its answer are both insufficient. As to the second paragraph, we think this view is correct. The fact that a railroad company has reduced the wages of its employees can not be held to justify or excuse a mob, composed of indiscriminate persons, in stopping a train of cars, and delaying the receiving of goods, or the transportation of freights; nor can the railroad company be held responsible for the consequences of such unlawful proceedings, when they cause such delay.

A majority of the court also hold the third paragraph of reply insufficient. They think that a fair construction of its averments means no more than that the employees committed the acts alleged against them in the reply, after they had refused to work for the company, and thus had severed their relations with the road, and had therefore ceased to be its employees.

If this is the fair construction of the reply, it is insufficient; but the writer of this opinion is constrained to differ from the majority of the court on this point. He can not see how the language of the averments can fairly bear such a construction. The persons alleged to have created the disturbance and caused the delay are averred, throughout the reply, to be the employees of the appellant, and the concluding sentence, which must be taken as referring to what precedes it, clearly avers " that none but the employees of the defendant engaged in any way in said disturbance." The reply, as the writer construes it, puts the fact whether the persons causing the delay complained of were the employees of the appellant or not, directly in issue, and, as it was thus presented to the court for trial and found against the appellant, that, therefore, the judgment ought to be affirmed; for it is a well settled principle

of law that a delay caused by a "*strike,*" or a mob, composed solely of the employees of a railroad company, as averred in the reply before us, will not excuse the company from receiving and carrying freight according to its contract or public duty.   Redfield Carriers, sec. 28 ; Edwards Bailments, sec. 609 ; *Conger* v. *The Hudson River R. R. Co,* 6 Duer, 375 ; *Parsons* v. *Hardy,* 14 Wend. 215 ; *Blackstock* v. *The New York and Erie R. R. Co.,* 20 N. Y. 48 ; *Condict* v. *The Grand Trunk R. W. Co.,* 54 N. Y. 500.

For the error in overruling the demurrer to the third paragraph of reply, the judgment must be reversed.

Other points not herein examined are presented by the record, but as it is scarcely possible that they will arise again, and as the law issues are now settled, we may be excused from deciding any other questions in the case.

The judgment is reversed, at the costs of the appellee ; cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings according to this opinion.