DAVID BURNHAM *v.* ALABAMA & VICKSBURG RAILWAY COMPANY.

1. RAILROADS.   *Unprecedented flood. Lives of employes. Perishable freight.*

In the transportation of perishable freight a railroad company is not under duty to incur the hazard of moving its trains over a part of its track the safety of which has been rendered uncertain by a recent unprecedented flood, and no liability for delay attaches in such case until it has had sufficient opportunity to make sure of the safety of the tracks by examination and needed repairs.

2. SAME.   *Work train.*

The fact that a railway engine, work train and crew have passed over a track, overflowed by an unprecedented flood, to see to its safety and make needed repairs, in no way affects the propriety of delaying the movement of freight and passenger trains until the safety of the track has been assured.

3. SAME.   *Train-dispatcher. Evidence. Peremptory instruction.*

The inference of negligence arising from delay by a railway company in the transportation of perishable freight is overcome by the uncontradicted testimony of its train dispatcher that the

train carrying the freight, which had been stopped in transit by an unprecedented overflow of its track, had been moved forward to destination as soon as it could have been safely done.

4. SAME. *Opinions. Conjectures. Witnesses.*

Mere conjectures or opinions of a witness are not sufficient in themselves to forbid the granting of a peremptory instruction to a party otherwise entitled thereto.

5. SAME. *Restored track. Burden of proof.*

While a railroad company is excusable for delay in the carriage of freight, caused by damage to its track from an unprecedented flood, the burden of proof is on it to show due care to transport the goods within a reasonable time after the track is repaired.

6. SAME. *Insurer.*

A common carrier is not an insurer against delay in the transportation of goods which it actually delivers.

FROM the circuit court of first district, Hinds county.

HON L. BRAME, Special Judge.

Burnham, appellant, was plaintiff in the court below; the railway company, appellee, was defendant there. From a judgment in favor of defendant the plaintiff appealed to the supreme court. The facts are stated in the opinion of the special judge, delivered on overruling plaintiff's motion for a new trial, which was adopted by the supreme court and made part of its opinion. *Infra,* p. 50.

*Watkins & Easterling,* for appellant.

The delay of three days is admitted, and that this is an unreasonable delay in the due course of business, is admitted; but the excuse offered, that on account of the heavy rains which occurred during the night and morning of the 27th of March, the same day on which the car was received by defendant at Meridian, the delay was unavoidable, and the defendant undertakes the burden, as was its duty to do, to show that the delivery was made at Jackson as soon afterwards as it was reasonably possible to do so.

We especially refer the court to the case of the *Vicksburg, etc., R. R. Co.* v. *Ragsdale,* 46 Miss., 458, where the rule covering "delay in shipment" and the question of "reasonable time" of delivery is declared to be peculiarly one for the jury.

After a careful examination of the record the court will see that while the evidence presents a material conflict on the main issue in this case, it rather tends to lead the mind definitely to the conclusion that if the high water was a sufficient cause for the temporary stopping of the car of bananas at Brandon, all difficulties on account of the high water were removed at the latest by the evening of the 28th, which was Friday, and, at which time, according to the testimony of the plaintiff, if the car had been brought on to Jackson, the plaintiff's loss would have been considerably less.

It is true this negligence in the delivery would be reduced by this view to only about twenty-four hours; but from the peculiar circumstance of this case, it can be easily seen that a delivery of bananas in Jackson, even as late as Friday evening, would have afforded the plaintiff an opportunity to unload his fruit, place it in the fresh air during Friday night, and on Saturday, as he testifies, he could most probably have disposed of it with probably little loss; whereas, the negligent delay until Saturday evening, the next day being Sunday, made it impossible for him to dispose of the property by sale before the following Monday; hence his great loss.

The act of God must not only be the proximate, but the sole, cause of the loss, for if mingled with the negligent delay of the carrier, he is still responsible. *Blythe* v. *Denver, etc., R. Co.,* 11 L. R. A., 616.

If there is no special contract, the fact that an unusual or unexpected flood so delayed transportation as to prevent prompt delivery is a sufficient excuse, provided proper care was exercised to avoid the consequences of the obstruction and reasonable speed made after its removal. 15 Am. & Eng. Ency. (2d ed.), 255, note 3.

*J. H. Thompson* and *McWillie & Thompson,* for appellee.

The evidence undisputably shows that the defendant did all the law requires to be done, in order to get plaintiff's freight to its destination at the earliest reasonable time in which it could do so.

The train dispatchers of defendant, without whose orders no train on defendant's line can run a foot, testified not only that the train which brought plaintiff's freight to Jackson was the first train that ran between Jackson and Brandon after the overflow, and that it was brought in just as soon as it was safe to do so, but further that the bananas were an "eye-sore" to them —meaning, of course, that they knew that bananas were perishable, and unless brought into Jackson very soon would spoil.

A railway company is a complex organization, and its operating department covers a wide field. It would be folly to insist that because section foremen state that their individual parts of the track were passable, therefore that fact alone determines that it is safe to move trains.

There must be a directing head and hand, there must be some superior officer or officers who have expert knowledge and authority, and to whom is left the determination of when trains can be run; and the testimony shows that it was to the train dispatchers that the running of trains was intrusted.

The train dispatcher testified positively that this car load of bananas was moved as soon as it could be moved, was gotten into Jackson as soon as it could be done, and this statement went into this record unchallenged. The witness is not even cross-examined as to this statement. There is absolutely not one scintilla of evidence that goes to cast doubt upon it. Upon what theory can plaintiff escape the far-reaching effect of this statement? Mere presumptions and inferences cannot avail him, and the court will observe that the inferences and expressed opinions of the plaintiff, so frequently made in his testimony, are inferences and opinions of a man who never

worked on a railroad and admits that he knows nothing about practical railroading.

As to the fact that two work trains passed over the overflowed track during the time this shipment was delayed, we do not think that it can be argued with any force whatever that because these trains did run, that other trains could have run, and that it was the duty of the defendant to take the same risks with freight and passengers—the lives and property of the public—as it did when its work trains went over the washed places and through deep water in order to repair its tracks.

The record shows that the flood which delayed plaintiff's fruit was the most excessive one that had ever been experienced on the line of the defendant's road.

CALHOON, J., delivered the opinion of the court.

If on the trial there had been a verdict for plaintiff it could not properly be sustained. In moving a large train of freight a railway company must not chance the lives of its operatives and others on it, and the immense property interests it was transporting, to save some perishable fruit. If it had, and disaster had resulted, it would have been liable, of course, and, perhaps, criminally so. The fact that operatives went with an engine over the track to see to safety and repair damages is to their credit, but in no way affects the propriety of delaying the movement of the main train until the safety of such action was reasonably assured.

We approve and adopt the conclusions of law and fact arrived at in the very conservative and lucid written opinion of the special judge presiding below, and request the reporter to set it out at length in the report of the case.

*Affirmed.*

The opinion of the special judge is as follows:

BRAME, Special Judge.

On March 26, 1901, the plaintiff shipped from Mobile, Ala., over the line of the Mobile & Ohio Railroad to Meridian a car

load of bananas destined for Jackson, Miss., on defendant's road. The freight train of defendant to which this car was attached left Meridian on the morning of the 27th, and was brought over the defendant's road to Brandon, which is fifteen miles east of Jackson, the latter place being ninety-five miles from Meridian. On that day, which was Thursday, there were unprecedented rains, which caused overflows and washouts at different places on the line of defendant's road. One was at Chunky, not far west of Meridian; one was near Bolton, west of Jackson; and the track was overflowed and washed out of line at two places east of Jackson—that is to say, between Pearson Station and Brandon. By reason of these washouts, the train, of which the car of bananas was a part, was put on a side track at Brandon Thursday afternoon, the 27th, and the locomotive was sent back eastward, presumably for the purpose of aiding and assisting in repairing the break at Chunky. This train remained at Brandon from Thursday afternoon, the 27th, until Saturday, the 29th, when a locomotive was sent from Jackson and the train was brought over, leaving Brandon at 12:40 P.M. and reaching Jackson at 2 o'clock. The plaintiff's evidence shows that by reason of the delay the bananas, which were just turning ripe at the time of being shipped from Mobile, were injured, and he was damaged. The question in the case is whether the defendant company is liable for the damages occasioned by the delay of nearly two days.

It is well established that a common carrier transporting freight is an insurer, and is only excused from liability for failing to transport by reason of the act of God, or the public enemy, or the conduct of the shipper. In this case the plaintiff accompanied the car, and his testimony tends to show that the defendant was without sufficient excuse for delaying the transportation of the car, but manifestly his statements are based largely, if not entirely, on opinion.

The evidence tends to show that the washouts, or injury, to the track between Pearson and Brandon were occasioned by the

unprecedented floods and that work was done on two different sections of the track that had been overflowed on Thursday and Friday. The evidence is not clear as to what time on Friday the track was put in condition for use, but it tends to show that the track was being worked on or repaired as late as Friday afternoon, though there are some inferences to show that it was repaired Friday morning. If the evidence stopped here, it would, I think, justify the inference that the defendant could reasonably have brought the car over from Brandon to Jackson late on Friday, or, at least, early on Saturday morning, and as the plaintiff's evidence shows, or tends to show, that his damages were increased by his not having gotten the car to Jackson Friday evening or Saturday morning early, the plaintiff would be entitled to recover. At any rate, he would be entitled to have the case submitted to the jury, the burden of proof being upon the defendant to show that it exercised due care to transport the car within a reasonable time after the track was in proper condition, and the question as to what is reasonable time, being one of fact, for the jury. But the undisputed testimony of Mr. Bonds, the train dispatcher, who had control of the movements of all trains on the road, is to the effect that no train could go east of Jackson to Brandon before Saturday, and that on Saturday morning a locomotive was sent over and brought the train to Jackson as soon as this could be done, this being the first train that was run over this section of the road after the track between Brandon and Jackson had been repaired. This witness was not cross-examined, and, therefore, his statement went to the jury unchallenged. It is contended by plaintiff's counsel that his statement in this regard gave merely an opinion, but I do not think so. It is well-known that a train dispatcher directs and controls the movements of all trains. He is in close contact with every part of the road, and is supposed to know, not only the condition of the track, but the location of locomotives and trains and other facts which will enable him to speak authoritatively in saying that a

train was moved as soon as it could have been moved.    As the witness was not cross-examined and asked as to his means of knowledge, or as to the particular facts upon which he based his statements that the car was brought to Jackson at the first opportunity, I think it must be assumed, as there is no evidence to the contrary, that his testimony as to this substantive fact is true.    It is true there is some room for contention that the testimony of the men who worked on the different sections was to the effect that the track was put in repair on Friday, and that as these men were on the ground, they knew the facts as to this. But this is hardly a contradiction of the statements of the train dispatcher.    His statements had relation not only to the condition of the track, but the location of cars and locomotives, the position of the different crews, and other particulars which would enable him to state as a fact that the car was brought to Jackson as soon as possible.    By cross-examination the plaintiff's counsel might have been able to show that he was mistaken as to some of these things, but as there was no cross-examination, and as the statement is not in itself unreasonable and the witness is not contradicted, I think the court is bound to assume that it is true    At any rate, the margin for dispute or controversy is so narrow that I do not think that the supreme court would permit a verdict for the plaintiff to stand if one should be rendered on the testimony in the case, and, therefore, it is my view that the peremptory instruction to find for the defendant was proper.

From the fact that a work train went through from Brandon to Jackson Thursday night and another Friday morning, I do not think it can be deduced that the railroad was negligent in not sending the freight train through under similar circumstances.    It was shown that it was a hazardous thing for the work trains to go through the water and over the track before the subsidance of the flood and before the track had been put in repairs.

It might have been commendable for the employes of the

railroad to take this risk with the work train, but I do not think that the defendant could be expected or required to take any such risk with a freight or passenger train, especially as the latter are shown to have been heavier than work trains.

The question is this case is a narrow one. I am fully aware of the rule that ordinarily all questions of fact are for the jury, and that if there is any evidence fairly tending to support the plaintiff's case, he is entitled to a judgment of twelve men, but in view of the facts of this case, I do not believe that a verdict for the plaintiff could be permitted to stand.

In *Empire Co.* v. *Philadelphia, etc., Iron Co.*, 35 L. R. A., p. 624, and note 3, it is said:

"The reasons which led to the adoption of the common law rule that makes a carrier an insurer of the goods which it transports, except when lost by an act of God or of the public enemy do not apply to the mere delay in transportation when the goods are actually delivered. The strictness of the rule which was adopted, to preclude collusion between the carrier and robbers, has no application where the mere time of the carriage is concerned. *Gulf, C. & S. F. R. R. Co.* v. *Levi*, 76 Tex., 337; 8 L. R. A., 323.

"For delay in receiving and carrying goods the carrier is not liable as an insurer, and is bound by the general rule of liability for a breach of his contract or by his public duty as a carrier, and may be excused for delay in receiving the goods, or in transporting them after they have been received whenever the delay is necessarily caused by unforeseen disaster which human prudence cannot provide against, or by accident not caused by the negligence of the carrier, or by thieves or robbers or an uncontrollable mob. *Pittsburgh, C. & St. L. R. R. Co.* v. *Hollowell*, 65 Ind., 188; 32 Am. Rep., 63."

I think this expresses the correct rule of law as applicable to the defendant in its duty to transport the car in question after the break and when the track had been put in repair. Having these views, I am constrained to overrule the motion for a new trial.