FISKE WARREN et als. *vs.* PORTLAND TERMINAL COMPANY.

Cumberland.    Opinion March 8, 1922.

*A common carrier having without reservation received merchandise for transportation is a qualified insurer of safe carriage. Loss or injury caused by a strike is not a defense. Its duty in prompt transportation is that of reasonable diligence and care, not as an insurer. A strike terminates the relation of master and servant, and the doctrine of respondeat superior does not apply.*

A common carrier is under obligation to receive merchandise tendered to it and to transport the same in a reasonable time. What is a reasonable time depends upon the circumstances of the particular case.

In the event of a strike, while it may be responsible as insurer for loss or injury to merchandise caused thereby, it is not necessarily bound to transport such merchandise in a time that would be reasonable under normal conditions.

It is under obligation to use reasonable diligence to prevent the occurrence of a strike and to minimize its injurious consequences.

It is also bound to inform its patrons of the fact of a strike and to keep them informed in relation to it while transportation is delayed so as to give them every opportunity to protect themselves from loss.

On agreed statement. On August 27, 1917 the ship "Binghampton" arrived at Portland with a cargo of coal consigned to the plaintiffs and destined for Cumberland Mills. Under the contract of carriage between the plaintiffs and the ship owners four days were allowed for loading and discharging. Beyond such time demurrage at a stipulated rate was provided for. Two days, twelve and one half hours of the time remained for discharging.

The ship was not unloaded until September 10th. The plaintiffs thereupon became liable and paid to the ship owners as demurrage the sum of $7,208.81. The plaintiffs claiming that the defendant was under obligation to discharge the cargo, and that it was responsible for the delay, brought this action to recover the sum paid the ship owners as demurrage. The defendant admitted its obligation to discharge the ship and that under ordinary conditions the discharging of the ship would have been completed on August 31st, and further averred that the delay until September 10th, was entirely due to a longshoremen's strike for which it was not responsible. Judgment for defendant.

The case is fully stated in the opinion.

*Bradley, Linnell & Jones*, for plaintiffs.

*Charles H. Blatchford, and George E. Fogg*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DEASY, J. The plaintiffs, S. D. Warren & Company, paper manufacturers, are a partnership, with mills at Cumberland Mills and elsewhere. The defendant owns and operates wharves in Portland and a line of railroad between its wharves and Cumberland Mills. Its wharves are equipped with apparatus for discharging coal and other merchandise from ships. Its tariff schedule which as a public service corporation it has filed with the Public Utilities Commission provides among other things a rate for discharging coal.

On August 27th, 1917 the ship "Binghampton" arrived at Portland with a cargo of coal consigned to the plaintiffs and destined for

Cumberland Mills. Under the contract of carriage between the plaintiffs and the ship owners four days were allowed for loading and discharging. Beyond such time demurrage at a stipulated rate was provided for. Two days, twelve and one half hours of the time remained for discharging.

The ship was not unloaded until September 10th. The plaintiffs thereupon became liable and paid to the ship owners as demurrage the sum of $7,208.81, and claiming that the defendant was under obligation to discharge the cargo and that it was responsible for the delay, they have brought this suit to recover the sum paid the ship owners as demurrage.

It is unquestioned that on the day of the ship's arrival the cargo was tendered to the defendant for discharge and transportation to Cumberland Mills.

Admitting its obligation to discharge the ship and that under ordinary conditions the unloading would have been completed on August 31st, the defendant says that the delay until September 10th was entirely due to a longshoremen's strike for which it is not responsible.

Thereupon the plaintiffs reply that notwithstanding the delay was due to a strike, the defendant is responsible for all damages.

Numerous authorities treat of the liability of common carriers that have received goods for transportation. In such cases the liability is that of insurers. Nothing will excuse failure to transport such merchandise safely except act of God or public enemies, inherent defects in the merchandise or fault of the shipper. Carriers are also bound to transport such merchandise promptly. But the carrier is not an *insurer* of *prompt* transportation. Its duty is that of reasonable diligence. For mere delay, not affecting the safety of the merchandise transported there is no liability if due diligence is proved. "In cases like the present for delay in receiving and carrying the goods the carrier is not an insurer."

*Railway Co.* v. *Hollowell*, 65 Ind., 194, 32 Am. R. 67; *The Richland Queen*, 254 Fed. 668; *Eaton* v. *Chicago Railway Co.*, 123 Mo. App., 223. 102 S. W. 575; *Geismer* v. *Lake Shore R. Co.*, 102 N. Y. 563, 7 N. E., 828; *Railway Co.* v. *Thompson*, (Texas), 103 S. W. 684; *Railroad Co.* v. *Cheatwood*, (Ala.), 68 So. 722; *Railway Co.* v. *Hurst*, (Texas), 135 S. W., 599; *Bacon* v. *Railway Co.*, 155 Ill. App., 43. 10 Corpus Juris 283.

The carrier must "exercise reasonable care and diligence to transport in a reasonable time without unnecessary delay."

*Johnson* v. *Railroad,* 111 Maine, 266. *Young* v. *Railroad Co.,* 113 Maine, 116.

With greater reason the liability of a carrier is not that of insurer where the merchandise though tendered to, has not been received by it.

Anciently the liability of a common carrier like that of any other bailee depended upon proof of negligence. Difficulties encountered by plaintiffs in making this proof induced the adoption of a stricter rule making the liability of a common carrier, entrusted with goods for shipment, a qualified insurance liability.

This rule has never been so far extended as to impose an insurer's liability upon a carrier in respect to goods not entrusted to it. In such cases care and diligence are the tests.

But the plaintiffs argue that while all this may be true where delay is due to such causes as accident or freight congestion, it is not true of strikes causing delay. A strike it is urged is the act of the carrier's servants and for these acts it is responsible. It is true, of course, that a master is charged with responsibility for the acts of its employee within the scope of his employment. But refusal to be employed is not within the scope of his employment. A servant may or may not be justified in refusing to work, but his refusal is not a part of his work.

Moreover when an employee without the consent of his employer strikes and refuses to return to his work he is no longer an employee.

Hutchinson on Carriers, (2d Ed.), Sec. 334; *Geismer* v. *Railway Co.,* 102 N. Y., 570; *Railway Co.* v. *Hollowell,* 65 Ind. 195, 32 Am. R. 68.

Some authorities support the plaintiff's contention that a "peaceable strike" cannot be a good defense to an action against a carrier for delay in transporting goods entrusted to it for carriage. Strikes accompanied by violence will, but peaceable strikes will not, so these cases say, excuse a carrier's delay in carrying merchandise received by it for transportation.

Note 35 L. R. A. 625 and citations.

The opinions in these cases must be based upon one of two theories:—

(1) That one who has been an employee but who has struck and refused to return to his work is still an employee for whose conduct the employer is responsible, or

(2)   That a common carrier's implied contract of insurance applies not only to safety but to promptness of transportation and (if applicable to the case at bar) extends not only to goods received for carriage, but to those tendered though not received.   We think that neither of these theories is sound.

With actions upon express contracts we are not concerned, nor are we concerned with actions for loss of or injury to goods in transit for which the law makes the carrier liable as insurer.   To such actions strikes cannot be interposed as a defense.

For damages caused by mere delay a carrier is responsible only when it fails to exercise reasonable diligence and care.   It must exercise reasonable diligence in supplying itself with suitable and sufficient facilities and employees, in averting strikes and saving its patrons from strike losses.   If it performs this duty it cannot be held liable through having imputed to it the fault of persons, once its servants, who have by striking put an end to the relation of master and servant.

The only case called to our attention where a strike was set up as a defense to an action against a carrier for refusal to receive goods for transportation is *Murphy Hardware Co.* v. *Railway Co.,* (N. C.), 64 S. E. 873.   In this case certain cattle were tendered for shipment. The railroad company refused to receive them because of a strike on its road.   No violence or intimidation was claimed.   The action was to recover a statutory penalty, but the court says that the statute was "enacted in aid of the common law."   The presiding Justice ruled that "the defense pleaded cannot avail the defendant even if true." This was held by the full court to be error.   A new trial was granted.

We hold that the defendant was bound to discharge the cargo of coal and to transport it to Cumberland Mills within a reasonable time. · What a reasonable time is depends upon the "circumstances of the particular case." *Johnson* v. *Railroad,* 111 Maine, 263. *Empire Co.* v. *Philadelphia Co.,* 77 Fed., 919, 10 Corpus Juris, 286.

The defendant was not necessarily bound to discharge the coal in a time that would have been reasonable under normal conditions. *Empire Co.* v. *Philadelphia Co.,* supra.   In re 2098 Tons of Coal 135 Fed., 320; *Hick* v. *Raymond,* 2 Q. B., 626; *Marshall* v. *McNear,* 121 Fed. 428.

It was under obligation to use reasonable diligence to prevent the occurrence of the strike and to minimize its injurious consequences.

It was bound, moreover, to inform the plaintiffs of the fact of the strike and to keep them informed in relation to it, while the discharge was delayed so as to give the plaintiffs every reasonable opportunity to protect themselves from loss.

*Eastern Railway Co.* v. *Littlefield,* 237 U. S., 145.

Turning to the facts in the instant case and applying the above principles thereto we find that the cargo of coal was not received by the defendant. It was tendered, but in no part received, until about September 10 when it was promptly discharged. Until then it remained in the custody of the plaintiffs in their chartered ship. It could have been taken by them to any other dock or port. The defendant had no claim or lien upon it. We do not find that the defendant failed to exercise diligence. It was diligent in its efforts to bring the strike to an end and to minimize the injury caused by it. Timely notice of the delay and the cause of it was given to the plaintiffs.

The details of the strike are recited at length in the agreed statement. They may be thus summarized: Very soon after the arrival of the "Binghampton" had been reported one of the defendant's employees, a man named Barry, was discharged for insolence and insubordination. His discharge was unquestionably justified. By reason of this discharge at about ten o'clock on the morning of the same day, August 27th, all of the defendant's employees on wharf Number 2 and all trimmers on wharf Number 1 went out on strike. A contract was then in force between the defendant and Local Union No. 861, International Longshoremen's Union, of which the strikers were members, wherein it was agreed that in case of any controversy or misunderstanding "the men shall continue to work," and the misunderstanding, controversy or grievance adjusted or arbitrated. Application was made to the Local Union and a conference had with a committee, but the men did not return to their work. Then upon application, one William F. Dempsey, Secretary-Treasurer of the Atlantic Coast Division, International Longshoremen's Union, came to Portland and upon investigation disapproved the conduct of the men and ordered them to return to their work. They still refused to return. The case shows that the plaintiffs did all in their power to procure an opportunity to discharge said vessel at some other dock in Portland, and that the defendant in order to aid the plaintiffs made arrangements for unloading at another wharf, but this arrange-

ment failed inasmuch as the workmen upon the other dock, being in sympathy with the defendant's striking employees, refused to discharge the ship.

The agreed statement goes on to say: "Whereupon, on August 31, 1917, said defendant employed other men to take the places of the employees who had walked out, known as strike breakers, and endeavored to the best of its ability to continue the operation of its said coal discharging facilities; that said strike breakers assisted by the local employees on wharf Number 1 were unable to perform the operations of said wharves in a normal and satisfactory manner, thereby greatly delaying and curtailing the operations which said defendant could conduct in and upon its said wharves; that various attempts to settle said misunderstanding between said defendant and the members of Local 861 were made, finally resulting in definite conclusion that said Barry was wholly in the wrong in his altercation with said Superintendent of Wharves, whereupon the members of said Local 861 returned to work, which was September 10, 1917."

The ship was not unloaded until September 10th. In the meantime the plaintiffs, by reason of the conditions of their charter party had incurred a heavy liability. But we think that the defendant exercised reasonable diligence, and in view of the unusual conditions discharged the ship in a reasonable time.

On the morning of August 27th before the strike began the Captain of the "Binghampton" reported to the defendant and presented his bill of lading. The defendant's agent accepted the report and indorsed on the bill of lading the day and hour of its presentation. It is agreed that the indorsement signified "that the defendant accepted its obligation as a public service corporation as aforesaid to notify the Captain to dock his vessel (in its turn) and to discharge said vessel."

It is contended that the indorsement was equivalent to a receipt of the coal for transportation. We think that it did not have this effect. It entitled the ship to its regular turn with others at the discharging dock. It was the acknowledgment of a tender. It was not tantamount to a receipt of the coal.

The plaintiffs argue that the defendant did not employ strike breakers until the lapse of four days after the strike begun and in this respect failed to exercise reasonable diligence. But the employment of strike breakers often aggravates and prolongs a strike.

It may be wise to first try other means. This the defendant did. It appealed to the Local Union with which it had an agreement that in case of differences "the men shall continue to work." It then appealed to the International Union and was sustained by its official. It then employed strike breakers.

It is not shown that the defendants failed to exercise reasonable diligence either before or after August 31st.

The plaintiff's counsel urges that the defendant could at any time have put a stop to the strike by re-employing the man Barry who was justifiably discharged for insolence and insubordination. The application by the defendant of its disciplinary measure was proper enough, the plaintiffs say, but ill-timed. The defendant should have waited until the "Binghampton" was discharged so that the expense and loss would fall upon itself rather than upon the plaintiffs.

This reasoning is plausible but unsound. In a few days the plaintiffs would have had their coal at Cumberland Mills, but somebody would have been tendering merchandise for transportation. The reasoning of the plaintiffs, if carried to its logical conclusion would almost if not quite make a railroad company, however blameless in the case of any strike, however causeless, liable not only to loss of its income, not only for damage to all whose merchandise had been received or tendered for carriage, but liable for all injuries sustained by the public through interruption of traffic. We think that this is not the law.

*Judgment for defendant.*