AMERICAN RAILWAY EXPRESS COMPANY, *Plaintiff in Error*, v. D. R. JOHNSON AND W. M. JOHNSON, DOING BUSINESS AS JOHNSON BROTHERS, *Defendants in Error.*

Opinion Filed May 8, 1924.

This case was decided by Division A.

1. Carriers of goods and merchandise may contract with their employers to diminish the liability imposed upon the carrier by the common law.

2. The carrier is liable for damages resulting from his own negligence but he may, by contract, protect himself from the hardships of a rule of law which requires him to make safe and expeditious delivery of goods accepted for transportation whether or not it is possible to do so by the use of all diligence and every agency available to him.

3. Questions affecting the carrier's contractual relations to the shipper in cases of interstate shipments are Federal questions and to be decided according to Federal law.

4. A provision in a contract between a carrier and a shipper affecting interstate shipments limiting the carrier's liability for loss resulting from delays in the transportation of goods due to strikes is a valid clause and binding upon the shipper.

5. The word "strike" in such a contract includes all strikes, whether called "outlaw," or strikes not called officially by the organization or labor union of which the strikers are members, or regularly called and organized strikes if the strike is so general and affects the facilities of the carrier so as to render it impossible for it to make prompt and safe delivery of goods intrusted to it for transportation.

6. A plea interposed by a carrier averring the existence of a strike participated in by certain employees of the carrier whose refusal to render services for which they were employed

rendered it impossible for the carrier to effect safe and expeditious delivery of goods intrusted to it for transportation, under a contract with the shipper limiting the liability of the carrier for damages resulting from delays in the transportation of the goods due to strikes, is a good plea.

A Writ of Error to the Circuit Court for Broward County; E. C. Davis, Judge.

Judgment reversed.

*Kay Adams & Ragland*, for Plaintiff in Error;

*Carson, Murrell & Farrington*, for Defendants in Error.

ELLIS, J.—In April, 1920, Johnson Brothers shipped to New York, New Jersey and Pennsylvania from Deerfield, Florida, a quantity of beans in nine shipments. The American Express Company undertook the transportation and delivery of the commodity. An outlaw strike occurred among the switchmen on the railroads over which the shipments had to be carried resulting in delays which on account of the perishable character of the vegetables rendered it necessary for the carriers in order to prevent total loss to sell them to the best advantage and account for the proceeds to the shipper, which it did. When the vegetables were delivered to the carrier it received them and issued its receipt therefor, which provided that unless caused in whole or in part by its own negligence or that of its agents, it would not be liable for loss, damage or delay caused by strikes, nor for loss, damage or delay caused by the nature of the property or defect or inherent vice therein.

Johnson Brothers brought an action on the contract for damages resulting to them from the failure of the carrier

to deliver the goods to the consignee which the plaintiffs allege resulted in a total loss. There were three hundred and twenty-nine baskets of beans alleged to be of the value of four thousand and thirty-eight dollars and sixteen cents. The plaintiffs claimed eight thousand dollars damages.

The defendant pleaded as to the first and second counts the switchmen's strike among the employees of the railway company upon which the defendant had to rely for the transportation of the vegetables, on account of which it became impossible to deliver the goods and that the defendant sold them to prevent total loss and paid to the plaintiffs the proceeds of the sale and they accepted the payment having full information of the facts. The strike and sale of the beans and payment of proceeds to the plaintiffs were the subjects of two pleas, numbered three and four, and related to one hundred of the three hundred and twenty-nine baskets of beans and twelve hundred and fifty dollars of the total value of the entire shipment.

As to the third, fourth and fifth counts the same plea was filed in so far as it related to the strike, the sale of the beans and tender of the proceeds to the plaintiffs.

As to the sixth and seventh counts, the same pleas as to the first and second counts were interposed; the strike, sale of goods, payment to plaintiffs of the proceeds and acceptance by them with knowledge of the facts. As to the seventh count another plea was interposed which challenged the plaintiff's right to maintain the action on the contract described in that count as they were not the real parties in interest, that the beans which consisted of ten baskets and valued at twenty-one dollars and ninety cents were the property of another person. The same pleas were interposed to the eighth and ninth counts as were interposed to the third, fourth and fifth counts.

The plaintiffs demurred to the pleas of payment or tender which were interposed to the first, second, sixth, seventh, eighth and ninth counts, and the demurrer was sustained.

The plaintiffs interposed two replications: First, that the strike was not authorized by the proper authorities in pursuance of the rules of the Switchmen's Union, and, second, the defendant negligently failed to notify the plaintiffs of the strike, or of its inability to carry the goods shipped. The defendant interposed a demurrer to these two replications. This demurrer was overruled, so the case went to trial upon the issues presented by the pleas of "not guilty," "never promised as alleged," and that the "strike" was not authorized by the Switchmen's Union, and that the seventh shipment involving ten baskets of beans was not the plaintiffs.

At the conclusion of the testimony counsel for the defendant moved the court for instructions to the jury as follows: As to the first and second counts there was no liability; as to the third, fourth and fifth counts there should be a finding for the plaintiffs to the amount of one hundred and seventy-one dollars and twenty-eight cents, which was the amount which the defendant tendered to the plaintiffs. As to the sixth and seventh counts there should be a finding for the defendant, and as to the eighth and ninth counts there should be a finding for the plaintiffs to the amount of eighty-three dollars and fifty-two cents. This motion was overruled and the court directed the jury to return a verdict for the plaintiffs in the sum of three thousand, nine hundred and thirty-four dollars and six cents.

The replication alleging the defendant's failure to notify the plaintiffs of the strike or its inability to carry the goods seems not to have received any consideration in

VOL. 87, JANUARY TERM, 1924. 455

American Ry. Express Co. v. Johnson et al.—Opinion of Court.

view of the court's holding that the provisions in the contract of shipment exempting the defendant from liability for damages as the result of delay caused by "strikes" had no relation to "strikes" which were not authorized by the Switchmen's Union. Nor should it have received any attention as such alleged failure of the defendant was not the cause of action upon which the plaintiffs rested their case as set out in the declaration. .

. It is generally known to be the law that carriers are allowed to contract with their employers so as very greatly to qualify and diminish the liability imposed upon the former by the common law. See Hutchinson on Carriers (2nd ed.) 258.

The common carrier of course is liable in any case for damages resulting from its own negligence, but he may by contract protect himself from the hardship and injustice of a rule of law which requires him to make delivery safely and expeditiously of goods accepted for transportation, whether or not it is possible to do so by the use of all diligence and every agency available to him. Independent of special contract the carrier would not be held liable for damages resulting from delay in the transportation of goods caused not by its own negligence or that of its employees acting within the scope of their employment, but by a *vis major* such as mob violence or a strike of such magnitude that it could neither be suppressed nor controlled by the carrier. See Gulf, C. & S. F. Ry. Co. v. Gatewood, 79 Tex. 89, 14 S. W. Rep. 913, Gulf, C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. Rep. 191; Lake Shore and M. S. R. Co. v. Bennett, 6 Am. & Eng. R. Cases, 391, text 401; 4 R. C. L. 764.

· The shipments were interstate shipments and the question presented as to the carrier's contractual relations to the shipper in the case is a Federal question to be decided

according to Federal law. Adams Express Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L. R. A. (N. S.) 257.

It is conceded, however, that the provision in the contract relating to the limitation of the carrier's liability for loss resulting from delays in the transportation of goods due to strikes is a valid clause and binding upon the shipper, but counsel for the defendants in error say that the sort of strike which was described in the testimony of the witness Cashen is not the sort of strike meant by that word as used in the contract.

Mr. Cashen testified that the "Switchmen's Union did not authorize any strike during the months of February, March or April, 1920." He said, however, that there was what might be called an "outlaw strike which originated in the city of Chicago on or about April 1, 1920, and the suspension of work at that time was confined to switchmen." The pleas averred that on account of such strike it became impossible for the defendant employing the railroads upon which the strike was effective, to make delivery of the goods by any routing and the goods being perishable it became necessary to sell them to best advantage to prevent total loss.

The amended fourth plea avers that the strike was general, extending from the middle part of the United States to Eastern territory, affecting all railroad facilities for transportation of goods, and the defendant did not know what the extent of the strike would be either as to territory or duration of time.

Counsel for the defendants in error undertake to draw a distinction between strikes authorized by labor unions and strikes not so authorized so as to affect the liability of the carrier. In one case, the former, they say, a carrier is relieved by its contract from the damages resulting

from delays in the transportation of goods occasioned thereby, while in the other they are not.

For purposes affecting the affairs of labor organizations such a distinction may be and doubtless is permissible and does exist, but to make the legal liability of a carrier depend upon the consent of a "grand chief" of a labor organization would be to substitute the will of an individual or a committee for the reason of the rule on which the exemption rests. When the employees of a carrier by agreement and concert of action refuse to perform their duties to the public which their several occupations require of them and thus prevent the corporation from functioning, it is none the less a condition over which the corporation has no control and against the consequences of which it seeks by contract with the shipper to protect itself. And employees in the latter situation thus withdrawing their services from the public can with no more reason be said to be acting within the scope of their employment than when they refuse such services upon the authority of their chief in the labor organization of which they may be members. The situation described by the pleas cannot be compared with the case of one employee who upon his own initiative refuses to work, where his place can be filled by another with sufficient diligence by the corporation to prevent delays in the performance of the carrier's duty. Here was a strike, the quitting of work by a body of workmen done by mutual understanding in order to obtain or resist a change in conditions of employment. Whether sanctioned or not by the organization of which they were members their act in withholding their services from the public service was as effective in preventing the carrier to perform its duty as if their conduct had been agreed to by their chief and produced a condition just as effectively over which the carrier has no control.

We think the pleas described a condition which brought the defendant within the protection of the clause against liability due to delays caused by strikes and that the defendant did all it should have done to meet the situation. See Pennsylvania R. Co. v. Olivit Bros., 243 U. S. 574, 37 Sup. Ct. Rep. 468; Leavens v. American Express Co., 86 Vt. 342, 85 Atl. Rep. 557; Warren v. Portland Terminal Co., 121 Me. 157, 116 Atl. Rep. 411.

The pleas were good, the replications were not, and the demurrer thereto should have been sustained.

The judgment is reversed with instructions to sustain the demurrer to plaintiffs' replication to defendant's pleas called "Further Amended Pleas." Three and four as to the first and second counts; three as to the third, fourth and fifth; three and four as to the seventh count, and three as to the eighth and ninth counts.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.