PUBLIC UTILITIES COMMISSION

*vs.*

JOHNSON MOTOR TRANSPORT

Kennebec.   Opinion, November 7, 1951.

*Frank M. Libby,* for Public Utilities Commission.

*Wilfred A. Hay,*
*John E. Hanscomb,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This case comes to the Law Court on exceptions to certain rulings of the Public Utilities Commission.

The proceedings were instituted by the Public Utilities Commission on its own motion under the provisions of Chapter 40, Section 59 of Revised Statutes (1944), in accordance with Chapter 44, Section 25 of the Revised Statutes (1944), which Section 25 reads in part as follows:

> "The commission also shall have authority to issue an order to any holder of a certificate or permit requiring such holder to cease and desist from any violations of the provisions of sections 17 to 30, inclusive, or of any rules or regulations of the commission promulgated pursuant to the authority thereof; * * * * *."

On October 24, 1950, the Commission, in writing, alleged that it had information tending to show that Johnson Motor Transport, of Portland, Maine was operating motor vehicles upon the public highways in the business of transporting freight for hire as a common carrier over regular routes, particularly from Portland and South Portland and other places, to Augusta, Bangor, Calais, Eastport and other points, without having obtained from the Commission a certificate declaring that public necessity and convenience required and permitted such operation and as a result such operation was contrary to the provisions of Section 18 of Chapter 44, Revised Statutes of Maine (1944).

The Commission notified Johnson Motor Transport to appear and show cause why the Commission should not issue an order to cease and desist from engaging in the business as a common carrier over regular routes between points within this state. Notice of the proceeding was also given by registered mail to Border Express, Inc., Cole's Express, Fox & Ginn, Inc., all of Bangor, Maine, and to Congdon Transportation and Maine Truck Owner's Association, both of Portland, Maine.

Hearings were held on the Show Cause Order in the State House in Augusta, Maine, and a large amount of evidence in the form of oral testimony and documentary exhibits was introduced by the Commission, by the Respondent, and by the Intervenors.

It seems to be recognized by all parties that Johnson Motor Transport is a corporation organized under the laws of Maine. It is recognized that the Motor Transport, or its predecessors in title, have been in the transportation business since 1930. It is the holder of a certificate of public convenience and necessity issued by the Interstate Commerce Commission on May 23, 1946. This I. C. C. certificate authorizes the respondent to engage in transportation in the interstate or foreign commerce as a common carrier by motor vehicle over "regular routes" which are described in the certificate as follows:

"From Portland over Maine Highway 3 to Augusta, Maine, thence over U. S. Highway 201 to Fairfield, Maine; thence over Maine Highway 11 to Newport, Maine, and thence over U. S. Highway 2 to Bangor;

"From Portland over U. S. Highway 1 to Brunswick, Maine, thence over U. S. Highway 201 to Fairfield, Maine, and thence over the above-specified route to Bangor;

"From Portland over U. S. Highway 1 to Bangor;"

The I. C. C. certificate also authorized the operation as such motor vehicle common carrier over the following described "irregular routes:"

"Between points and places in that part of Maine, on and south of Maine Highway 16, on the one hand, and on the other, points and places in Massachusetts within twenty-five miles of Boston, including Boston."

Johnson Motor Transport is also the holder of Contract Carrier Permit No. 190 granted to it by the Maine Public

Utilities Commission, as a matter of right under the so-called "grandfather clause" of Chapter 259 of the Public Laws of 1933 (now R. S., Chapter 44, Sections 17-31) on November 9, 1933, and renewed on February 23, 1950. The authorization granted by this Maine contract carrier permit is to operate a motor vehicle or motor vehicles as a contract carrier "within the general area and/or for the general purposes within which and for which John R. Johnson has been regularly engaged in transporting freight or merchandise for hire over the highways of this state from March 1, 1932 to June 30, 1933, the effective date of Chapter 259, Public Laws of 1933."

At the hearing, before the Public Utilities Commission, Johnson Motor Transport took these three exceptions:

I.  The Commission erred in allowing Fox & Ginn, Inc., Moore's Motor Express, Inc., Fogg's Transportation Co., Congdon Transportation, B & E Motor Express, Roy Bros. Transportation Co., Inc., Sanborn's Motor Express, Dugas Express Co., Border Express, Inc., Cole's Express, Maine Central Railroad Co. and Bangor and Aroostook Railroad Co. to intervene as parties to the proceedings, to present evidence and to cross examine at will the respondent's witnesses.

II.  The Commission erred in taking judicial notice of the operating rights granted by the Commission to the above named intervenors in so far as they relate to the matter in hearing.

III.  Respondent excepts to three findings of fact by the Commission and to its judgment, order and decree thereon on the ground that said findings of fact are without substantial evidence to support them, and that said findings of fact and the judgment, order and decree of the Commission are unwarranted in

law which third exception is hereinafter set forth in detail.

The findings of fact, to which exceptions are taken, are as follows:

1. "From all the evidence it can hardly be disputed that Johnson Motor Transport's operation over Routes 1, 2, and 3 between Portland and Bangor in handling both interstate and intrastate freight is in accordance with the I. C. C. authority heretofore granted to the company, namely, as a common carrier over regular routes, of interstate commerce."

2. "From all the facts presented, we conclude that Johnson Motor Transport, in the operation under discussion, up to this point between Portland and Bangor and intermediate points and return is acting as a common carrier over regular routes of intrastate shipments within the State of Maine."

3. "There is nothing in the operation Bangor to Calais and return that can lead one to a different conclusion than that the operation is one of common carriage. Neither do we find anything to indicate that the carriage is over irregular routes, in spite of the fact that Johnson Motor Transport's authority from the Interstate Commerce Commission is to carry on an irregular route operation. Here is an instance where the presumption that the operation follows the authority (I. C. C.) seems to be contradicted by the facts. We are therefore, brought to the conclusion that in the operation from Bangor-Brewer to Calais and return, Johnson Motor Transport has been engaged in hauling merchandise as a common carrier over regular routes between points in the State of Maine."

The order, judgment and decree, to which exceptions are taken, is in part as follows:

"That Johnson Motor Transport, holder of Contract Carrier Permit #190 issued by this Commission, cease and desist immediately from any further operation as a common carrier of merchandise for hire over regular routes between points within this state, viz.: between Portland to Bangor (Brewer) and intermediate points."

"* * * * * Also between Portland to Bangor (Brewer) to Calais and intermediate points over U. S. #1 and return over the same route."

The above first and second exceptions relating to (1) the authority of the Public Utilities Commission to allow interested third parties to intervene and to present evidence, and (2) the authority of the Commission to take judicial notice of its own records as to rights of intervenors, were expressly waived by Johnson Motor Transport in its brief and at oral argument. (Relative to these two abandoned exceptions, see *Public Utilities Commission* v. *Gallop,* 143 Me. 290; *Damariscotta Water Co.* v. *Itself,* 134 Me. 349). The third exception taken to findings of fact on the ground that there is no substantial evidence to support, and, therefore, that the decree of the Commission is unwarranted, is the only exception to be considered.

The Law Court is not an appellate court from the Public Utilities Commission to retry questions of fact. Facts found by the Commission are not open in this court, unless the Commission shall find facts to exist without any substantial evidence to support them. If a factual finding, as a basis for an order by the Commission, is supported by any substantial evidence, the finding is final. *Public Utilities Commission* v. *City of Lewiston Water Commissioners,* 123 Me. 389, 123 Atl. 177; *Hamilton* v. *Caribou Power Company,* 121 Me. 422; *Casco Castle Co., Petr.,* 141 Me. 222; *Re Samoset Company,* 125 Me. 141. See also for law and procedure, *Public Utilities Commission* v. *Gallop,* 143 Me. 290, 62 Atl. (2nd) 166. "Substantial evidence" is such evi-

dence as taken alone would justify the inference of the fact. *Gilman* v. *Telephone Co.*, 129 Me. 243, 248.

The Commission has statutory authority to suspend a certificate or permit issued by it, and to issue a "cease and desist" order, for violation of certain statutes or legal regulations. R. S. (1944), Chap. 44, Sec. 25. To operate as a common carrier over regular routes the persons or corporations must have a certificate from the Commission of public convenience and necessity. R. S. (1944), Chap. 44, Sec. 18.

Johnson Motor Transport holds a Contract Carrier Permit issued to it by the Public Utilities Commission. It holds no certificate from the Commission of public convenience and necessity as a common carrier within the state.

The real and practically the only question presented in this case, therefore, is whether Johnson Motor Transport operates as a common carrier of intrastate freight between points in this state. The Motor Transport says it does not and that it operates only as authorized by its Contract Carrier permit. It offered evidence which might be considered substantial evidence as tending to show the fact to be as claimed. On the other hand, the evidence submitted by the intervenors and by officials who investigated for the Commission is substantial, and tends to show the fact to be to the contrary.

John R. Johnson, President of Johnson Motor Transport, testified that as to freight carried "we pick it up in Boston and we pick it up somewhere else along the route we are allowed to operate;" that the merchandise picked up in Portland destined for Bangor, or other points, "goes along" in the same trucks starting from Boston, "we pick it up with the understanding that we deliver it at the first opportunity, we take anybody's freight that we feel we can handle." Johnson said there was no difference in the billing between interstate and intrastate freight, and no freight was refused

where it could be handled. Evidence was offered as to the volume of interstate and intrastate business of Johnson Motor Transport, and as to the manner of conducting the business. From the evidence the Commission could well find that the usual charges were "the common carrier rates." There was substantial evidence also that Motor Transport solicited intrastate and interstate business generally and not individual contracts for the intrastate. There was substantial evidence that while engaged in its interstate common carrier business it was also at the same time and by the same trucks engaged in intrastate business; that usually one truck per day, except Saturday and Sunday, left Portland for the east; that freight was accumulated for both interstate and intrastate shipments, and that there were regular routes with only slight or occasional deviations. A study of the waybills, driver's "logs," circulars, and other documentary evidence, shows the manner of handling freight, routes, destinations, and schedules over the whole state between Portland and Calais. From this documentary evidence it could be found that prompt **and regular service** was maintained over well recognized or regular routes, and that contracts of carriage were contracts such as is usual with common carriers.

The definition of a common carrier at common law seems to be clearly recognized by all the parties in this proceeding. A common carrier is one who holds himself out as engaged in the public service of carrying goods for hire, to the limit of capacity, and to "take anybody's freight." The statute does not define. A common carrier is an insurer of the goods in his custody and is liable unless he can show that the loss or damage is due to an act of God, the act of a public enemy, the fault of the shipper or the inherent nature of the goods. *Warren* v. *Portland Terminal Co.*, 121 Me. 157, 116 A. 411; *Rogers* v. *Steamboat Company*, 86 Me. 261, 272; *New England Express Co.* v. *Maine Central Railroad*, 57 Me. 188; 9 Am. Jur. "Carriers," 430, Section 4; *Morse* v.

*Railway Co.*, 97 Me. 77, 13 C. J. S. "Carriers," 131, Section 71; *Tarbox* v. *Eastern Steamboat Co.*, 50 Me. 339.

With the contract carrier (sometimes called the private carrier), upon the other hand, there is an individual contract made with the carrier for the carriage of certain goods to a certain destination for a certain price. The contract carrier may refuse to take the goods and refuse to contract for carriage. The business of the private contract carrier grew up with the motor vehicle. At first, an individual owning one or more trucks was accustomed to haul merchandise from place to place for hire over the highways. No regulations were needed because trucks were few. As more and more engaged in transportation by motor truck, however, it became necessary to make rules of law to protect the public, as well as to protect the ever increasing number of competing contract and common carriers from themselves. Under a so-called "grandfather clause" the regulatory statutes permitted the first of the private contract carriers to receive a certificate to enable them to continue their accustomed business over their accustomed routes. R. S. (1944), Chap. 44, Sec. 21 - III; *State* v. *King*, 135 Me. 5.

The contract with a private carrier may be in writing, it may be oral, or it may be implied from all the circumstances. It may be for one carriage of freight or a series. Each act of transportation, however, is a separate and individual act. It is not for public convenience and necessity but is a private transaction. The contract carrier does not hold himself out to accept all freight of all who offer. He makes an individual contract and is only liable for negligence under the contract he has made. *Public Utilities Commission* v. *Utterstrom*, 136 Me. 263; 9 Am. Jur., 435, Section 10 "Carriers"; 13 *Corpus Juris Secundum*, 31, Section 4 "Carriers"; *Haddah* v. *Griffin*, 247 Mass. 369. Even a common carrier may become a private contract carrier by special

engagement to carry what is not its duty to carry. *Buckley* v. *B. & A. R. R.*, 113 Me. 164, 93 A. 65, L. R. A. 1916-A, 617. All persons transporting freight for hire and not common carriers are included as contract carriers. R. S. (1944), Chap. 44, Sec. 21.

The principal defense offered by the respondent Motor Transport is to the effect that at no time did it acknowledge that it was a common carrier or "hold itself out as a common carrier." There is substantial evidence, however, from which the Commission could find that it accepted anybody's freight, that it had rarely, if ever, refused freight; that the rate charged was the common carrier rate or "sometimes higher"; that intrastate freight was carried in the same manner, under the same conditions, in the same trucks, and at the same time as the interstate. In short, there was substantial evidence from which the Commission could find that there was nothing in the service or nature of the service offered or rendered that differed from that of a common carrier.

What constitutes a common carrier, and what constitutes a contract carrier, are questions of law, but whether the carrier is acting as a common carrier or as a contract carrier is a question of fact. The fact is to be determined, in proceedings of this kind, by the Commission. The question is often a question of difficulty. Has the carrier held himself out as a common carrier, not necessarily by what has been said by the carrier or his agents, but by his acts? Every carrier might be able to avoid the insurer liability as a common carrier by simply insisting that he was a contract carrier, if his words were conclusive and his acts immaterial. The natural inclination of the contract carrier is, of course, to do the largest possible amount of business with the smallest danger of liability. Liability as an insurer is greater than the liability for negligence. Proof of carrier negligence is often difficult or impossible. To re-

fuse an occasional shipment by one claiming to be a contract carrier does not make him a contract carrier. It is evidence only of the fact. It is sometimes easy and convenient to raise a "smoke screen." It is the general and well recognized rule that a carrier cannot be a common carrier of intrastate freight and at the same time be a contract carrier. One part of a truck devoted to the public use as an interstate common carrier may be inconsistent with the other part devoted to intrastate contract carrier service. The regulation required under the statute might become the impossible.

The Public Utilities Commission carefully considered both the interstate and the intrastate business, the circumstances indicating a common carrier business, and the manner of conducting the claimed contract service, in its determination of the facts.

The claims and contentions of a party to litigation are often drowned in a sea of circumstances where only the truth is able to rise and swim.

From the substantial evidence in this proceeding the Commission was justified in finding, as it did, that Johnson Motor Transport in its intrastate business was operating over regular routes as a common carrier. The "cease and desist" order of the Commission, under the facts found, was proper.

*Exceptions overruled.*