E. S. WARNER,   E. L. LORANCE, and J. E. GAM-MON, Respondents, v. ST. LOUIS-SAN FRANCIS-CO RAILWAY COMPANY, a Corporation, Appellant.*

In the Springfield Court of Appeals.   Opinion filed July 1, 1925.

1. **CARRIERS: Pleading: Practice: Trial: Portion of Answer Held Properly Stricken Out by Trial Court: Not a Defense.** In action by shipper against carrier for delay in furnishing stock cars, and delay in transporting stock, defense that the delay was caused by strike of shopmen of carrier, portion of answer alleging that plaintiffs loaded the stock with knowledge that Federal Government had applied for restraining order against shopmen's strike, *held* properly stricken out by trial court, being not a proper matter of defense, as knowledge of such fact would be more likely to cause plaintiffs to believe the strike had been averted than otherwise.

2. **Same.** In action by shipper against carrier for delay in furnishing stock cars, and delay in transporting stock, portion of defendant's answer alleging that the stock was shipped under a written contract exempting defendant from liability for delays on account of strikes, *held* properly stricken out by trial court, being not proper matter of defense, as such contract had no relation to delay in furnishing cars, such contract being entered into after the alleged delays in furnishing cars, and could only apply to counts of petition which were for delay in transporting the stock.

3. **Same.** In action by shipper against carrier for delay in furnishing stock cars, and delay in transporting stock, portion of defendant's

answer relative to failure of plaintiffs to give notice before removing any injured live stock from car was properly stricken out by trial court where from jury's verdict it would appear that the matter was decided in defendant's favor, and in any event, such defense was not good in answer to the counts for delay in furnishing cars.

4. **COMMERCE: Carriers: Interstate Shipments: Federal Law and Decisions Govern.** In actions at common law against carriers for damages caused by delays in furnishing cars for interstate shipments, and for delays in transporting such shipments, the laws of the United States and the common-law principles adopted by the Federal courts govern.

5. **CARRIERS: Actions Against Carriers for Delays: Common-law Remedy Available.** In action under common law against carrier for delay in furnishing stock cars and delay in transporting stock, the common-law remedy is available, notwithstanding the various statutes.

6. **———: Duty of Common Carriers at Common Law Stated.** Under the common law, common carriers are bound to provide sufficient cars for transporting, without unreasonable delay, the usual and ordinary quantity of freight offered to them, or which might reasonably be expected.

7. **———: Interstate Commerce Act: Duty of Carrier to Furnish Cars Not Absolute.** Under Interstate Commerce Act (U. S. Comp. St. Ann. Supp. 1923, sec. 8563), the duty of carrier to furnish cars is not an absolute one.

8. **———: Duty to Furnish Cars: Strike of Shopmen as Defense.** In shipper's action for damages for delay in furnishing stock cars, that shippers knew of existence of strike of defendant's shopmen would be no notice as to defendant's inability to furnish cars; shippers had right to assume, in absence of timely notice, that the cars would be furnished at the time requested, and were justified in bringing their stock to defendant's station, at such time, for shipment.

9. **———: ———: Notice of Inability.** It is well settled that a carrier, in order to be excused from liability to shipper for failure to furnish cars on date requested, must give notice to shipper of such inability.

10. **———: Delays in Shipment: Power to Contract Against Liability.** Carrier has right to contract against liability for damages in shipping live stock, except in case of its negligence proximately contributing thereto, if a situation has developed without negligence

on its part, such as a shopmen's strike, and which carrier has reason to believe would cause delay in transporting the stock; it can refuse to accept the shipment for failure to comply with a reasonable requirement in relation thereto, providing existing strike could be considered as cause for unavoidable delay.

11. ——: ——: ——: **Federal Statutes: Common Law.** Under Carmack Amendment (U. S. Comp. St., sec. 8604a), Interstate Commere Act, as amended by First and Second Cummins Amendments (U. S. Comp. St., secs. 8592, 8604a), a carrier is not an insurer, and, where the negligence of a connecting carrier is not involved, may exempt itself by contract from liability for damages caused by unreasonable delay in transporting, except for its own negligence; rule being same as at common law.

12. ——: ——: **Strikes as Excuse for Delays: Stipulations Exempting Carrier from Liability for Delays.** In so far as interstate shipments are concerned, a strike of a railroad's employees, which is set up as an excuse for delay in transporting, under a stipulation in a shipper's contract exempting the railroad from liability on account of such delays, is not, as a matter of law, negligence attributable to the railroad company, and such stipulation, if made in good faith, is a valid one; railroad being bound, however, to exercise diligence to overcome the effect of the strike, and may be liable for negligence in that respect.

13. ——: ——: **Strike as Excuse: Question for Jury.** In shipper's action for damages for delay in transportation of interstate shipment of live stock, with defense that delay was caused by strike of shopmen, whether strike was unavoidable *held* a question for jury under evidence.

14. ——: ——: **Statutes: Contracts Limiting Liability: Negligence of Carrier: Burden of Proof.** Sections 9926, 10018, and 10449, Revised Statutes of 1919, construed together, *held* not to make carrier an absolute insurer; carrier should not be required to do the impossible, and, where circumstances arise which prevent delivery within a reasonable time, the carrier should be enabled to limit its liability by contract, as at common law, with the burden of proving itself free of negligence, as provided in sections 9926 and 10449.

15. ——: ——: **Carrier Held to Have Right to Show Delay Not Due to Its Negligence.** Under stipulation in bill of lading providing that, except in cases of negligence proximately contributing thereto, no carrier in possession of any live stock should be liable for any delay caused by strikes, etc., carrier had right to show that delay

in intra-state shipment of live stock was not caused by its negligence.

16. COURTS: Court of Appeals Bound by Decision of Supreme Court. Court of Appeals is bound by decision of Supreme Court of State.

17. CARRIERS: Delays in Shipment: Whether Delay Caused by Strike Held for Jury. In shipper's action for damages for delay to intrastate shipment of live stock, whether delay was caused by strike of shopmen held for jury.

18. APPEAL AND ERROR: Appellate Practice: Instruction Held Not Reversible Error, under Circumstances. Instruction relating to carrier's alleged delay in furnishing cars for interstate shipment held not reversible error, though failing to require proof of carrier's negligence, where whole defense and excuse for delay was based on strike of shopmen of carrier, which defense was not available to carrier in absence of timely notice to shipper.

19. CARRIERS: Furnishing Stock Cars: Delays: Measure of Damages. Measure of damages for delay in furnishing stock cars is the difference in the market price at the place of destination when the shipment should have arrived and when it did arrive, plus the additional expense incurred because of the delay.

20. TRIAL: Instructions: Instruction Held Erroneous as Assuming Fact in Issue. In shipper's action for damages for delay in furnishing stock cars and delay in transporting stock, instruction on measure of damages held erroneous as assuming that cattle were not promptly delivered, which was a fact to be proven by plaintiff under petition.

21. CARRIERS: Delays in Interstate Shipments: Shipper Has Burden of Proving Carrier Negligent. In action by shipper for delay in transporting interstate shipment, plaintiff has burden of proving carrier guilty of negligence, and failure to require the jury to so find is error.

22. ———: Trial: Instruction Erroneous in Making Carrier Insurer. In shipper's action for damages for delay in furnishing stock cars and delay in transporting stock, instruction on measure of damages held erroneous in ignoring stipulation in bill of lading limiting defendant's liability on interstate shipment on account of strikes, and in making carrier an insurer; in view of holding that such stipulation is valid.

*Headnotes 1. Carriers, 10 C. J., Section 75 (Anno); Section 419 (Anno); 2. Carriers, 10 C. J., Section 75 (Anno); 3. Carriers, 10 C. J.,

Section 75 (Anno); 4. Commerce, 12 C. J., Section 115 (Anno); 5. Carriers, 10 C. J., Sections 66, 405; 6. Carriers, 10 C. J., Section 66; 7. Carriers, 10 C. J., Section 66; 8. Carriers, 10 C. J., Section 75 (Anno); 9. Carriers, 10 C. J., Section 69 (Anno); 10. Carriers, 10 C. J., Section 210; 11. Carriers, 10 C. J., Sections 172, 174, 404; 12. Carriers, 10 C. J., Sections 408 (Anno), 415; 13. Carriers, 10 C. J., Section 440; 14. Carriers, 10 C. J., Sections 404, 406 (Anno), 430 (Anno); 15. Carriers, 10 C. J., Section 437 (Anno); 16. Courts, 15 C. J., Section 308; 17. Carriers, 10 C. J., Section 440 (Anno); 18. Appeal and Error, 4 C. J., Section 3014; 19. Carriers, 10 C. J., Section 446; 20. Trial, 38 Cyc., p. 1657; 21. Carriers, 10 C. J., Sections 430 (Anno), 441 (Anno); 22. Carriers, 10 C. J., Section 441.

Appeal from the Circuit Court of Laclede County.—*Hon. W. E. Barton,* Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *E. T. Miller,* of St. Louis, *Mann & Mann,* of Springfield, and *Frank H. Farris,* of Rolla, for appellant.

(1) A railroad company is bound to furnish suitable cars required by customers whenever it can be done with reasonable diligence, without jeopardizing its other business. 6 Cyc. 372. A railroad company is bound to provide sufficient cars for transporting, without unreasonable delay, the usual and ordinary quantity of freight offered to them, or which might reasonably and ordinarily be expected. 4 R. C. L. 672; Howell v. Hines, 236 S. W. 887 and 888, and cases cited. (2) Excuse for not furnishing cars and for delay in transportation. Inability to furnish cars, except by undue interference with the general business of the company and the rights of other shippers, will constitute a defense in an action for failure to furnish cars. 6 Cyc. 373. In general, a carrier is not bound to anticipate any unprecedented condition of affairs, at least not to the extent of taking steps to provide against it. So in the case of a strike in mines, in which it is in the habit of obtaining its coal, necessitating the sending of its cars to a distant point to pro-

cure a supply of coal for its engines, it will not be liable for a refusal to furnish cars to another mine in operation in the strike district. 4 R. C. L. 674. Not only storms and floods and other natural causes will excuse delay, but the conduct of men will also do it. 4 R. C. L. 744; Giesmer v. Lake Shore & Mich. Ry., 55 Am. Rep. 837. It is also said that where conditions confront a railroad, or where from any other cause there is an unexpected and extraordinary influx of business to the road, its obligation will be fully met by shipping such stock or produce in the order and priority of time in which it is offered. 4 R. C. L. 673; Howell v. Hines, 236 S. W. 887 and 888, and cases cited. As to strikes, the old rule seems to have been that where delay results solely from the lawless violence of the strikers, the carrier was not responsible; but where the employees of a company suddenly abandon its service, and offer no violence, and causes no forcible obstruction to its business, and simply refuse to work, or further discharge their duties, for any delay consequent thereon, for instance, where there is a failure to supply promptly their places, the carrier was liable. 4 R. C. L. 744; Pittsburg, Ft. Wayne & Chicago v. Hazen, 84 Ill. 36, 25 Am. Rep. 423; Pittsburg, etc., Ry. v. Hollowell, 65 Ind. 188, 32 Am. Rep. 63; Giesmer v. Lake Shore & Mich. Ry., 55 Am. Rep. 839; Panhandle v. S. F. Ry., 235 S. W. 914; Jonesborough L. & C. and E. R. Co. v. Maddy, 248 S. W. 913. Whatever may have been the earlier rule on the question of strikes it now seems to be the well-established rule that strikes or stoppage of labor which bring about a delay in the furnishing of facilities for transportation of goods and cattle as well as the actual delay in the transportation of the same can be pleaded as a defense in an action for failure to furnish facilities or to transport without delay. All that is required of the carrier in cases of strikes or stoppage of labor is that it shall exercise diligence to take care of the situation as presented in the securing of necessary labor or means to meet the emergency. Pennsylvania R. Co. v. Olivit Brothers, 243 U. S. 575; American Fruit Dis-

tributors v. Hines, 203 Pac. 821, 825; Warren et al. v. Portland Terminal Co., 116 Atl. 411; Leavens v. Express Co., 85 Atl. 558; Murphy Hardware Co. v. Southern Ry., 64 S. E. 873. And the question as to whether the strike or the stoppage of labor prevented the carrier from performing its common-law duty in the furnishing of transportation facilities or in the carriage of freight, or whether it prevented the carrier from performing an obligation to furnish cars or to carry freight under the terms of a bill of lading or a contract is a question to be submitted to the jury. See cases cited above; Panhandle & S. F. Ry. Co. v. Thompson, 235 S. W. 914; Stillman v. Chicago, R. I. & P. Co., 192 N. W. 860, 862. In an action by shipper against a carrier for discrimination and failure to furnish cars, the question as to whether or not the demand for cars was so great that it could not have been anticipated, or by the exercise of reasonable care been supplied, is a question for the jury. Chicago, R. I. & P. Ry. Co. v. Simms, 256 S. W. 34. We are aware of the case of Reed v. Railway, in the 60 Mo. 207, wherein the court says that it was a correct declaration of law "that a delay on account of obstructions to the running of trains must be by persons other than the employees or servants, in order to excuse it for such delay." And wherein it was held "that a company would be held responsible for delay in transportation of freight where it was caused by its servants suddenly and wrongfully refusing to work." This declaration was made on the theory that the employees were still the agents of the company; but that is not now the correct rule. Strikers cease to be in the service of a railroad company or in any sense its employees or agents, for whose conduct it is responsible when they take part in a strike against it. Geismer v. Lake Shore Ry., 102 N. Y. 763, 7 N. E. 828, 55 Am. Rep. 837. But the case of Reed v. Railway, 60 Mo. 207, is no authority against the position of appellant in this case. It was well said in that case, l. c. 205, "that the doctrine is now well established in this State that a common carrier by a special contract can limit his com-

mon-law liability, but he cannot exempt himself from the consequences of his negligence.'' The damages sought and recovered in this case was for the freezing of potatoes. The freezing was not necessarily the result of delay. It became the duty of the carrier if a delay arose by reason of the strike and the car of potatoes was stopped in transit to take and exercise ordinary care to prevent their freezing. In this case, the contract was an absolute undertaking, and there was no exception made in reference to any circumstances by which the defendant was surrounded. But in the case at bar, there was an express provision of exception in both of the shipments of stock, which exception exempted the company from liability for any loss occasioned by strikes or the stoppage of labor.

If the company was bound in the Reed case, supra, then must the shipper be bound in the instant case. The answer in this case pleads a condition over which the defendant had no control, the evidence tended to show an absolute impossibility for the defendant company to supply the places of strikers to keep up its equipment, and operate its railroad. It has been judicially determined by the courts of the United States that the strike complained of was an unlawful conspiracy, extending throughout the limits of the United States, involving two million men, seven thousand and more of whom were employees of this defendant. This being true, this conspiracy which resulted directly in the stoppage and cessation of defendant's labor, impairing thereby the operation of its road, was certainly such an unforeseen event and one in which it had no participation and such an emergency as to make it a legal excuse for delay in furnishing cars. United States v. Railway Employees, 283 Fed. 479. And this is further supported in case of In Re Grand Jury, 62 Fed. 840. This position is also supported by the case of Gage v. Arkansas Central Ry., 254 S. W. 665, wherein, in making application of the rule that, ''Where an unusual contingency has arisen, which unexpectedly increases the business of a railroad, it will

be excused for a delay in shipment," it was further said, "That where a railroad company was prevented in the handling of freight in a prompt and expeditious manner by unforeseen conditions, such as a strike, over which it had no control, and over which, in the nature of things, it could have no control, it will be excused from receiving freight for shipment." The duty to deliver within a reasonable time is a term engrafted by legal implication upon the promise of the carrier to deliver generally. In this respect, however, it stands upon the same ground with other bailees, and may excuse delay in the delivery of the goods by accident or misfortune, although not inevitable or produced by the Act of God. All that can be required of it in such an emergency is that he shall exercise due care and diligence to guard against the delay, and if it occur without his fault or negligence, he shall omit no reasonable efforts to secure the safety of the goods. Hutchison on Carriers, par. 330, page 265. However, a carrier may limit himself from responsibility almost without limit by an express or special agreement. There is no danger or risk for which he cannot avoid responsibility by a contract fairly and understandingly made. Hutchison on Carriers, par. 248, page 200. So, it has been held that weather conditions may justify an embargo on the shipment of live stock, and where the shipper has been notified of such embargo, even when he has his hogs in the pens ready for shipment, that the carrier will be relieved from any damage to promptly ship the hogs. Stewart v. Railway, 222 S. W. 1030. It must be remembered in this case, that the strike complained of was nation-wide, known to every human being who read the newspapers. The plaintiffs in this case were chargeable with the knowledge of the strike, and the conditions that it was creating. They knew of the delays and trouble of the defendant company in the operation of the trains, and in the furnishing of its cars to shippers, and are, therefore, chargeable with knowledge. In the case of Cronan v. Railway, 149 Mo. App. 384, it is held that a carrier may be excused for delay in fur-

nishing a car on account of an unusual increase in business, provided notice is brought to the shipper. In this case, everybody had notice of railroad conditions. The court itself would take judicial notice of it. An extraordinary increase of business which could not have been anticipated and provided for by using judgment and diligence, and which prevents a railroad from furnishing cars is a good defense to an action for such failure. Shoptaugh v. Railway, 147 Mo. App. 17. The question as to what is a reasonable time, either to furnish cars or in the transportation of freight, depends upon and is to be determined by the conditions existing at the time and the facilities on hand for use and the ability of the carrier after the exercise of ordinary prudence to comply with the demand of the public, and these are all questions of fact to be submitted and passed upon by the jury. As to the obligation imposed upon the railroad company, for which recovery is sought in counts one and three, we contend that the obligation was not one created by contract, but an obligation imposed upon the company by law. That obligation was, upon order, to furnish means of transportation within a reasonable time. The law does not require the performance of a thing impossible, where the act to be performed is by obligation of law, and not by terms of contract. The evidence in this case tends to show that it was humanly impossible, by the exercise on the part of the railroad company of every power, to furnish the cars requested by respondent. There is no evidence that this fact was known to the company at the time the cars were ordered. The only inference that can be drawn from the testimony is, that both appellant and respondent knew of the strike, and that both parties expected its termination at any time, and if not its termination, that appellant hoped and expected to supply the help withdrawn by reason of the strike. There was no absolute, unconditional contract to furnish cars. There was only a duty or obligation under the law, and if conditions make it impossible to perform that duty, then there can be no liability. The evidence tends to

show that the appellant company did everything in its power to secure labor necessary for the carrying on of its business, but was unable to do so. Therefore, it was impossible for it to perform the contract which the law imposed upon it, and the rule is, where the law creates a duty or charge, and the party is disabled to perform it, without any default in him, there the law will excuse him. 9 Cyc. 627; 6 R. C. L. 998; Middlesex Company v. Knappman Whiting Co., 64 N. J. L. 240, 45 Atl. 692, 81 Am. St. Rep. 471. (3) The second count being for delay in the transportation of an interstate shipment, is controlled by the Federal law, and the shipper, urging negligent delay, has the burden of proof, regardless of any State statute. And the stopping of a stock train to pick up stock, take coal and water and to meet and pass other trains is not a negligent delay. Berry v. Railway, 208 S. W. 623. And this is true, regardless of any State statute making proof of unreasonable delay prima-facie evidence of negligence. Baker v. Schaff, 211 S. W. 103. Mere proof of delay in an interstate shipment will not establish prima-facie negligence, regardless of sections 9926 and 10449, R. S. 1919. The plaintiff has the burden of showing that the delay was due to the carrier's negligence, and this burden remains on the plaintiff throughout the entire case. Hunt v. Railway, 172 S. W. 62; Bland v. Railway, 232 S. W. 232; Eaton v. Railroad, 125 Mo. App. 225 and 226; Howell v. Davis, 236 S. W. 890, and cases cited. One of the plaintiffs, Mr. Warner, accompanied the shipment of stock from Phillipsburg to St. Louis, and was possessed of knowledge as to the operation of the trains carrying his stock. If there was any delay, the cause thereof was not within the exclusive knowledge of the defendant, and the burden, therefore, did not shift, so that circumstances which raise a slight inference of negligence would be insufficient to entitle plaintiff to recover, for where the shipper accompanies the stock, as in this case, under the contract of shipment, without charge, the burden remains upon him to prove that any loss which he sustained was occasioned by de-

fendant's negligence. Kolkmeyer v. Railway, 182 S. W. 797; Baker v. Schaff, 221 S. W. 743; Howell v. Davis, 236 S. W. 890. (4) The liability in the second count, if any, is based on a bill of lading or contract of shipment, wherein the carrier limited its liability, so that it was exempted from any loss or damage occasioned by riots, strikes, stoppage of labor, etc. And by further requiring that for any visible or manifest injury to the live stock, the shipper, owner or consignee or agent thereof should inform the delivering carrier before removing the stock from its possession, or mingling the stock with other stock. Common carrier may, by contract, limit its liability except for damage or loss resulting from its negligence. 6 Cyc. 386. The law does not forbid certain contracts between carriers and shippers which aim to fix the terms on which goods shall be carried, and when there is such a special contract, it takes the place of the contract which the law, in the absence of a special agreement, implies. And in so far as it speaks, is to be referred to for the purpose of ascertaining the rights and liabilities of the parties. And where such special agreements take the form of limitation on the latter's liability, they are recognized as valid if, in the judgment of the court, they are just and reasonable. 4 R. C. L. 704; Jonesborough L. C. & E. R. Co. v. Maddy, 248 S. W. 912 and 913, and cases cited; Morrison v. Frisco, Springfield Court of Appeals, not yet reported. That the delay in shipment on the second count was brought about and caused by a strike or the stoppage of labor which defendant could not cure by reasonable diligence was a proper and legal defense, and the court erred in striking out parts of defendant's answer setting up such defense, and in giving a peremptory instruction declaring that all evidence offered in support of such defense should be withdrawn from the jury, for the reason that the same constituted no defense, and this was clearly reversible error. Jonesboro L. C. & E. Ry. v. Maddy, 248 S. W. 911. It was provided in the contract in the above case that the shipper assumed and released the company from injury

or loss sustained by reason of delay in transportation of
stock caused by mob, strike or by refusal of the com-
pany's employees to work, etc. And the court said that
the carrier may by fair and reasonable agreement restrict
its liability to losses which are the proximate results of
strikes on its own road, or that of its connecting carrier,
where the loss is not occasioned by the negligence of the
carrier or the carrier could not by reasonable diligence
have prevented the loss. And the issue should, therefore,
have been submitted to the jury. Jonesboro L. C. & E.
Ry. v. Maddy, 248 S. W. 913. The only thing that would
prevent a carrier from pleading strike conditions as a
defense to its contract of shipment would be bad faith on
its part. The controversy giving rise to this strike was
not between the carrier and its employees. The carrier
had presented the matter in issue between them to the
authority recognized and designated by law—the Labor
Board. The Labor Board heard, investigated and de-
termined the matter between them. The carrier had a
right to not only expect but to believe that its employees
would obey the judgment of the legal authority, and if
it did not do so temporarily it had a right to believe and
expect that any day or any hour it would submit itself
to the law, so there can be no bad faith on the part of the
carrier in this case. Cuymal Fruit Co. v. Johnson Iron
Works, 262 Fed. 387; Hawkhurst v. Keyser, 84 Fed. 693.
A provision in a bill of lading that the shipper would
give written notice of injury to the railroad company,
before removing the animals or mingling them with other
animals, is rigidly enforced by the Federal courts, and
is not allowed to be waived by the company. O'Briant v.
Railway, 195 S. W. 759 and 760, and cases cited; John-
son v. Mo Pac., 187 S. W. 283; Cudahy Packing Co. v.
Railway, 201 S. W. 624. The bill of lading on an inter-
state shipment must be regarded as containing the en-
tire contract upon which the responsibilities of the parties
rest; and none of the provisions thereof can be waived
by either party. Cudahy Packing Co. v. Bixby, 205 S.
W. 865. So, where the carrier pleads an exemption un-

der contract and proves that the loss was occasioned by the cause excepted, the burden is not upon it to go further and prove affirmatively that it was not guilty of negligence, but that fact must be proven by the plaintiff. Reed v. Railway, 60 Mo. 206; Cudahy Packing Co. v. Railway, 187 S. W. 151 and 152. The provision in a contract of an interstate shipment for notice to the carrier of injury within one day before the removal from the point of shipment or place of destination and before mingling with other stock is valid. McElvane v. Railway, 176 Mo. App. 382, and cases cited; Ball v. Lusk, 175 S. W. 238. (5) The defendant being a common carrier could restrict or limit by contract its liability. The only thing prohibited being that it could not contract against its own negligence. This being true, defendant, in this case, had a right to limit its liability for a delay or loss in the shipment of stock under the fourth count, and to protect itself against such loss by reason of any strike or the stoppage of labor, etc. Exemptions from liability created between the shipper and the carrier are valid, if such limitation is such as the law can recognize as just and reasonable and not inconsistent with sound public policy. 4 R. C. L. 765. The general principal that a common carrier may by agreement with the shipper limit to some extent its common-law liability applies to live stock. 4 R. C. L. 986. And contracts for the shipment of live stock, providing that notice of any loss shall be given in writing prior to the removal of the same if found to be fairly entered into and reasonable, will be upheld. 4 R. C. L. 988. The carrier of intrastate commerce may, by contract, limit its liability; and a provision in a contract of shipment for written notice of damage within a certain time will be enforced. Kolkmeyer v. Railway, 182 S. W. 796, and cases cited. So a notice requiring claim for loss or damage in writing to be made within four months at the point of delivery or the point of origin, has been held valid, and a notice at a different point held insufficient. Equity Elevator Co. v. Railway, 177 S. W. 773. A limitation expressed in a contract whereby a forfeiture of a

lease, for failure to work a mine, could be avoided by rea-
son of a strike, has been directly upheld in this State.
And a strike is defined therein. Smith v. Mercantile Co.,
170 Mo. App. 27. (6) Plaintiffs were required to prove
the negligence on the part of the defendant to recover
upon any count of their petition. It is charged in the
first and third counts that the carrier failed to furnish
the cars within a reasonable time. The carrier undertook
to and did by the testimony raise an issuable fact for the
jury as to whether or not it had lawful excuse for any
delay that had arisen. It then became the duty of the
plaintiff to submit proof that, regardless of such legal
excuse, it was negligent somewhere in the performance
of its obligation. In the second and fourth counts of
plaintiff's petition it is simply charged that there was
an unreasonable delay in the transportation of the stock,
and the proof of plaintiff is simply that the time con-
sumed in the transportation was an unusual time and in
excess of the ordinary and usual time. Defendant carrier
offered testimony to explain the movement and han-
dling of its trains which carried the stock, showing that
there was no delay in the operation of the train after it
left the terminals at Springfield and at Newburg, except
for the loading of stock, taking on fuel and water and the
meeting and passing of other trains, and that the delay
at the terminals was occasioned by the strike. The con-
tract of shipment exempted the carrier from liability for
the strike if it did not contribute to the damage by its
own negligence. Under such state of facts it then be-
came the duty of the plaintiff to prove some negligence
on the part of defendant carrier. This it absolutely
failed to do. Pennsylvania R. Co. v. Olivit Brothers, 243
U. S. 575; American Fruit Distributors v. Hines, 203 Pac.
821; Warren et al. v. Portland Terminal Co., 116 Atl.
411; Leavens v. Express Co., 85 Atl. 558; Panhandle
& S. F. Ry. Co. v. Thompson, 235 S. W. 913; Howell v.
.Hines, 236 S. W. 886; Davis v. Cornwall, U. S. S. (7)
Measure of damages. The measure of damages as set
out in instruction one was erroneous: (a) Because the

decline in the market value should have been the difference between the date that the cattle should have arrived on the market if the car had been furnished as requested and the date that the cattle actually arrived upon the market, and not upon the date that it should have arrived if promptly delivered. (b) Because the instruction assumes that the stock was not promptly delivered, when that was a question for the jury to determine. The damages recoverable for a failure to deliver cars is the difference in the market price at the place of destination when the shipment should have arrived and when it did arrive, plus the additional expense incurred because of the delay. Morrison v. Frisco (Springfield Court of Appeals, not reported); Bennett v. Railway, 151 Mo. App. 298; Hahn v. Railway, 141 Mo. App. 461. (8) Instruction No. 2 is erroneous in that it fixes the liability of the defendant as an insurer without regard to the provisions and limitations of a contract of shipment under which the reception and transportation of the cattle were had. T) recover on the second count, the plaintiff had to prove negligence. See authorities cited under point 3. Said instruction is further erroneous in that it does not state the correct measure of damages. And this statement is especially true with reference to a crippled cow. There is no evidence nor inference that any delay in the transportation was the cause of crippling the cow; and certainly plaintiff was not entitled to recover that element of damage, and the instruction is erroneous in considering it as a part of the measure of damages. Instruction No. 3 is erroneous in that it does not correctly state the measure of damages. The measure of damages is correctly set forth under point 6 of appellant's brief, and supported by authorities therein cited. The gauntness of the cattle and calves and their staleness were not elements of damage. The gauntness was the result of loss of weight, and certainly appellant is not liable to pay for the loss of the weight, and then because they did lose weight, and for the appearance that might be produced by the loss of that weight. Instruction No. 4 is

erroneous for the reasons set forth as against instruction No. 3. It is further erroneous in that it fixes the liability of the defendant as an insurer without regard to the provisions and limitations of a contract of shipment under which the reception and transportation of the cattle were had. To recover on the fourth count respondent had to prove negligence, and in addition thereto to prove that the notice of the damage to the stock which was apparent and visible had been given to the appellant before the removal of the stock or the mingling of it with other stock. See authorities under point 5. Instructions Nos. 1, 2, 3 and 4, given for plaintiffs, were all erroneous, because in none of them was the question of negligence of the carrier submitted to the jury. See cases heretofore cited. Instruction No. 7, in view of the authorities and points heretofore set out in this brief, was clearly erroneous. A strike of such magnitude and character was a legitimate defense to counts 1 and 3, based upon our liability under the common law; and especially so on counts 2 and 4, which were based upon contracts of shipments wherein it was specifically provided that delays not caused by our negligence, but caused on account of the stoppage of labor or by strikes or riots, would excuse the defendant company from liability. And the issue on that point raised by the pleadings and supported by the testimony should have been submitted to the jury for its determination. Instructions D, E, F, G, H, I, J, K, L and M were all predicated upon the answer as filed by the defendant, and the claims made by it that under the law it was permitted to plead as a defense to all counts of the plaintiffs' petition as an excuse for the delayed performance of any duty enjoined upon us by law or by contract, that we were prevented from doing so by the strike. If, therefore, the court should hold that the strike was not a legitimate defense to any of the counts in plaintiffs' petition, as was held by the trial court, then, of course the action of the trial court in refusing all of these instructions is not erroneous. But if the court should hold otherwise on any of the counts in plaintiffs' petition

then the refusal of some of these instructions would be error. But in our judgment it is not necessary to encumber this record by taking up these instructions specifically and making reference thereto. (9) Instructions A and B asked for by the defendant and refused by the court should have been given, and it was error in the court to refuse them. The substance of these instructions was that if Lorance was the owner individually of part of the cattle shipped and that the cattle were not owned by the partnership, then the partnership could not sue and recover for a loss or damage to the whole shipment. That there existed two causes of action, one in the name of the partnership for loss of partnership cattle, and another in the name of Lorance for the loss upon the Lorance cattle. Lyons v. Carter, 84 Mo. App. 483; Hardesty v. Railway, 179 S. W. 725. (10) The court erred in the admission of illegal and incompetent evidence on the part of the plaintiffs as to the amount and elements of damage sustained by them. The plaintiffs and their witnesses were permitted to testify that because of the cattle becoming gaunt and rough and stale their market value was depreciated. To all of which defendant objected on the ground that the same constituted no element of damage and was not recoverable under the pleadings. That the measure of damages was the difference in the market value of the cattle at the destination where they should have been delivered as compared with the market value at the time they were delivered. We contend that we cannot be chargeable with loss in weight by reason of unreasonable shrinkage brought about by delay, and at the same time be charged with additional damage on account of the looks produced by the shrinkage, and especially so where the cattle shipped were beef cattle or stock cattle, sold by the pound, and not show cattle, whose looks had to do with their prize winning upon exhibition, or where the cattle were not to be sold by the head. 4 R. C. L., page 932; Ayres v. Railway Co., 71 Wis. 372, 37 N. W. 432, 5 A. S. R. 232. For negligent delay in transportation, the measure of dam-

ages is the decline in the market value between the date when the goods should have been delivered and the time they were actually delivered, together with any resulting injury on account of the delay and expense occasioned thereby. 6 Cyc. 525 and 526. The true measure of damages is the difference between the market price of the cattle when they did arrive and when they should have arrived, together with the difference between the actual and the unusual shrinkage of the cattle. Wilson v. Railway, 66 Mo. App. 395 and 396, and cases cited; Gann v. Railway, 72 Mo. App. 340; Morrison v. Frisco (Springfield Court of Appeals, not yet reported, and cases therein cited). (11) The court erred in the exclusion of the testimony offered by witness Worman. By this testimony the carrier offered to show that prior to July 1, 1922, the force then employed was sufficient to, and did keep up its motive power and equipment, so that the company was able to meet all the requirements the public made upon it for the furnishing of cars and the transportation of freight. This testimony was excluded, and in its exclusion we think the court committed error, for such fact tended to show that it was the strike conditions that made it impossible to comply with its obligations and its contracts which were the basis of plaintiff's suit.

*L. C. Mayfield,* of Lebanon, *John S. Haymes,* of Marshfield, and *Phil M. Donnelly,* of Lebanon, for respondents.

(1)    Under both the Federal and Missouri Statutes, common carriers are required, upon reasonable request, to provide and furnish transportation for property offered, and safely transport the same to its destination, or a connecting carrier. Interstate Commerce Act as amended 1920, 41 Stat. L., sec. 1 (4), and (Carmack Amendment) sec. 20 (11); R. S. 1919, secs. 9925 (Amended 1921, p. 268) and 9926. And without reference to the statutes, such is their duties at common law. Baker v. Railroad, 145 Mo. App. 195; Lumber Co. v.

Railroad, 216 Mo. 677; State ex rel v. Taylor, 251 S. W. Col. 386; Creamery Co. v. Railroad, 128 Mo. App. 425; Collins v. Railroad, 181 Mo. App. 213; Robinson v. Bush, 199 Mo. App. 194; Bratton v. Railroad, 167 Mo. App. 75; Cudahy v. Railroad, 193 Mo. App. 577. (2) Plaintiff's action is based upon defendant's common-law liability, and in such case it is not necessary to show negligence, but when it is shown the cars had been ordered and not furnished within a reasonable time; that the stock had been delivered in good condition and the bill of lading issued by defendant shows them to be in that condition, and that they were in a damaged condition when they reached their destination, a case is made out. R. S. 1919, sec. 10449. Davis v. Railroad, 89 Mo. 350; Boyd v. Express Co., 211 S. W. 702; Sullivan v. Express Co., 211 Mo. App. 123; Johnson v. Railroad, 249 S. W. 658; Krallman v. Railroad, 209 Mo. App. 291. (3) Only the act of God or the public enemy, the fault of the shipper or the inherent vice of the property shipped is an excuse for failure to transport property by common carriers. Hence it must follow that neither the existence of a strike on the part of defendant's employees nor its effects is a defense to plaintiffs' action. Read v. Railroad, 60 Mo. 207; Rittman v. Railroad, 184 Mo. App. 426; Morrison v. Railroad, 264 S. W. 449, and cases cited. (4) Neither is the existence nor affects of the strike rendered effective as a defense to this action by the provision of the bill of lading exempting defendant from liability for delay in shipment through strikes. Sullivan v. Express Co., 211 Mo. App. 131, quoting from Railroad v. Wallace, 223 U. S. 481. (a) As to the intra-state shipment, counts three and four, certainly under the Missouri laws, the exemption provision of the bill of lading was without force. R. S. 1919, sec. 10449; Cravens v. Hines, 218 S. W. 914. (b) In the case of the interstate shipment, counts one and two, it would seem that under the Carmack and other amendments to the Federal law, the exemption provision of the bill of lading is also invalid. Interstate Commerce Act, sec. 20 (11).

By prohibiting the limiting of liability on the part of common carriers in both the original and new amendments, Congress surely meant something. It is significant, that in the amendment added, not only is the limiting of the amount of the recovery prohibited; but the "limitation of liability" is also declared "unlawful and void." Under the original law it has been held that limitations of liability were not permitted. Holland v. Railroad, 139 Mo. App. 720; McKinstry v. Railroad, 153 Mo. App. 552. In State v. Taylor, 251 S. W. 385, DAVID E. BLAIR, Judge, said: "Relator could not have limited its liability to loss, damage or injury occurring upon its own lines if it had attempted to contract to that effect when it undertook to transport the shipment (interstate) over its own and connecting lines." It is difficult to understand why the carrier could not have contracted for a partial exemption, if, as claimed here, it could have contracted for a total one. It is usually believed that the greater includes the lesser. This of course is a Federal law, and if in its construction there is a conflict between the Federal and State courts, the former controls. So far as we are advised, the leading case in the Supreme Court construing the Carmack amendment, is Adams Ex. Co. v. Croninger, 226 U. S. 491. While holding, if we read the case right, that the statute does not make the carrier an absolute insurer, it must answer for a "default in its common-law duty as a common carrier." That would include this cause of action, for failing to transport property. (c) The exemption clause in the bill of lading is not supported by a consideration. George v. Railroad, 214 Mo. 558; Kellerman v. Railroad, 136 Mo. 177; Schade v. Railroad, l. c. 101; Botts v. Railroad, 191 Mo. App. 682. The bill of lading shows the live stock was transported at the regular tariff rates, and under the Federal law there can be but the lawful rate-one-rate (———— v. Railroad, 138 S. W. 551), and it must follow that the consideration was wanting. Some cases have held that though the rate was the regular one, that that was doubtless made by the carrier with a view to

the particular property, that cannot now hold good, as the law now fixes the rate in interstate shipments. (d) But if valid in any respect, the limitation of liability mentioned in the bill of lading, was prospective in its operation, only took effect from the time of its issuance and the delivery of the property, and could not affect the failure, already past, of defendant to furnish cars for the transportation of the live stock. Southern Ry. Co. v. Shipley, 245 S. W. 524; Rittman v. Railroad, 184 Mo. App. 424; Buschow Lbr. Co. v. Hines, 206 Mo. App. 687. In the latter case it is said, quoting from the Supreme Court of the United States: "Transportation of live stock begins with delivery to the carrier of the property to be loaded upon its cars, and ends only after the stock is unloaded and delivered, or offered to be delivered to the consignee." In this case the laws under which both bills of lading were issued, and the papers themselves show that they relate only to property after it had been received. Had respondents undertaken to deal with the liability already incurred by appellant's failure to furnish transportation, they would have failed for want of consideration. Vivion v. Railroad, 172 Mo. App. 354; Grass v. Frisco Railroad, 238 S. W. 551. If the contention, that the contract related only to the future, is sound, and we are right as to it being void as to the intrastate shipment, even if not void as to the interstate shipment, it can only affect the case as to the second count, on which the recovery was $66.50. (e) Even if the exemption clause in the bill of lading possessed validity, to make it available as a defense, defendant was required to bring itself within its protection. "The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense . . . if the failure to deliver was due to . . . some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception." Railway v. Wallace, 223 U. S. 1. c. 492, quoted in Sullivan case, 211 Mo. App. 131-2; Cudahy v. Railroad, 193 Mo. App. 581. To do this, it was, therefore, incumbent upon it to show: (1) That it used rea-

sonable efforts to overcome the effects of the strike, and that it, itself, was not at fault: Jonesboro L. C. & E. R. Co. v. Maddy, 157 Ark. 484, 248 S. W. 911. "After the employees have quit the carrier's employment, it is its duty to promptly supply their places, if practicable." 10 C. J. 293. "The only duty resting upon the carrier not otherwise in fault is to use reasonable efforts and due diligence to overcome obstacles thus imposed and to forward the goods to their destination, but this duty is one which it is bound to observe." 10 C. J. 294—Title, Strikes and Mobs. This is the rule where the existence of a strike is material. But in the case at bar, defendant's own testimony showed it failed to use reasonable efforts open to it, in that it refused to treat with its employees, who sought to confer with it with a view to returning to work. By this evidence, the defendant impeached its defense, and justified the court in refusing to submit the question of the strike to the jury. (2) That knowing or learning of its inability to transport plaintiffs' stock, it promptly notified them, not of the strike, but its inability to transport. In Eastern Ry. Co. of N. M. v. Littlefield, 237 U. S. 140 (L. Ed. 59-878), where shipper, in May, 1907, notified Railway Company that two hundred cars would be wanted in September and October for shipment of cattle, and at the time stated 3,900 head were bought to be shipped, company refused to furnish cars, saying that under the Federal law, on account of increased business and car shortage, it could not do so without discrimination against others. The shipper kept the cattle at a great expense for some time, and sued for damages. The court, in part, said: "Where without fault on its part a carrier is unable to perform a service due and demanded, it must promptly notify the shipper of its inability; otherwise the reception of the goods without such notice will estop the carrier from setting up what would otherwise have been a sufficient excuse. . . . The liability of the carrier under these facts (after stating them), and in the absence of a showing of new facts establishing an excuse, became fixed, when the cat-

tle were tendered for shipping and the carrier failed to furnish the facilities needed. That liability cannot now be avoided by proof that the failure to furnish the cars was occasioned by a shortage for which the carriers may not have been responsible, but as to which they failed to give timely notice to the shipper.'' Russell Grain Co. v. Railroad, 114 Mo. App. 496; Thero v. Railroad, 144 Mo. App. 166; Cronan v. Railroad, 149 Mo. App. 395. There was no testimony that defendant notified plaintiffs that it would be unable to ship their cattle. Even if plaintiffs knew that there was a strike in existence, that was not notice that the stock could not be shipped. The evidence shows that stock was being shipped, notwithstanding the strike. (3) That the existence of the strike was the sole producing cause of plaintiffs' damages. ''If these exemptions (those for which defendant would not be liable) concurred with defendant's failure to discharge its common-law duty, and caused the death (hog), defendant would not be relieved from liability.'' Sullivan v. Exp. Co., 211 Mo. App. 132-3. (5) If the clause in the bill of lading exempting defendant from liability for damages growing out of strikes were invalid, and the existence of the strike without it was no defense for failing to transport plaintiffs' stock, or if defendant did not make reasonable efforts to overcome the effects of the strike, or if it did not show that it timely notified plaintiffs that it could not transport the cattle, or if it failed to show that the strike caused the damages claimed, the court was justified in refusing to submit the question of the strike to the jury.

BAILEY, J.—Plaintiffs' petition is in four counts, seeking damages for failure to furnish stock cars within a reasonable time after written notice and for delay in shipment of live stock. Counts one and two relate to an interstate shipment; counts three and four are on an intra-state shipment. The answer, after a general denial, pleads, among other things, the shopmen's strike of 1922, as an excuse and reason for the delays mentioned in

218 Mo. App.—22.

plaintiffs' petition. Judgment was for plaintiffs on all four counts, hence this appeal.

The first count of plaintiffs' petition charges that on or about the 28th day of October, 1922, plaintiffs notified defendant's agent at Phillipsburg, Missouri, that they would want one stock car on the 4th day of November, 1922, in which to ship thirty-six head of cattle from said station to East St. Louis, Illinois, which was alleged to be reasonable notice; that the car was not furnished until November 26, 1922; that plaintiffs were damaged in the sum of $455.40 for feeding and care of cattle while waiting for the car, and decline in market price.

The second count relates to the same shipment and charges that plaintiffs delivered the thirty-six head of cattle to defendant on November 26, 1922, at Phillipsburg, for shipment to the market in East St. Louis; that it was defendant's duty to transport said stock to market in a reasonable time; that ten or twelve hours was a reasonable time in which to have transported said stock; that defendant did not have said stock ready to be delivered at said market until thirty-two hours after receiving same at Phillipsburg; that on the 27th day of November, 1922, when said stock should have reached the market and been sold, the market value was fifty cents per hundred higher than on the 28th when the stock was sold; that one cow was crippled; that the cattle shrunk in weight and plaintiffs were damaged in the sum of $253.62.

The third count of plaintiffs' petition charges that on or about October 21, 1922, plaintiffs notified defendant's agent at Phillipsburg, Missouri, that they would want one car on the 25th day of October, 1922, in which to ship forty head of cattle and five calves from Phillipsburg, Missouri, to St. Louis, Missouri; that the notice was reasonable; that the defendant failed to furnish the car until November 20, 1922; that plaintiffs were damaged in the sum of $445.95.

The fourth count relates to the same shipment referred to in the third count of plaintiffs' petition and charges delay in shipment, to approximately the same extent as in count two; the date of shipment was November 20, 1922; the damage claim is based on shrinkage in weight of live stock caused by the alleged delay in transporting.

Defendant's first assignment of error relates to the action of the trial court in striking out certain parts of defendant's answer. As this answer is quite lengthy, we shall give only a brief synopsis of its contents. The answer, after pleading a general denial, sets up special defenses first as to counts one and three, then as to counts two and four. As to counts one and three it is alleged, that if it be true plaintiffs ordered the cars at the times set out in the petition and that the cars were not delivered within a reasonable time, that such failure to deliver was no fault of defendant but was occasioned by conditions over which it had no control, namely, the "Shopmen's Strike" of July 1, 1922, called in protest to a decision of the United States Labor Board reducing their wages; that all "skilled labor" left the services of defendant and refused to work and by reason thereof, the cars could not be furnished; that the Interstate Commerce Commission issued preferential orders for fuel and food stuff; that under the safety appliance acts of Congress it was unlawful for the railroad company engaged in interstate commerce, to haul any defective cars or locomotives, and that on account of defendant's inability to secure skilled labor it could not keep its cars and locomotives in the condition required by the Act of Congress; that the normal movement of trains was obstructed by acts of violence of strikers and sympathizers; that plaintiff and the general public knew defendant was unable to procure sufficient help and that delays were likely to occur, and knew the strike was not a disagreement between defendant and its employees, but over the decision of the wage board and with such

knowledge ordered the cars and had their stock ready for shipment.

We now come to the parts of defendant's answer stricken out by the trial court. Defendant charged that in recognition of a conspiracy to obstruct the movement of the United States mails, the Government of the United States applied for a restraining order against the shopmen's strike, and plaintiffs, with knowledge thereof, loaded their stock. We do not believe this allegation material; knowledge of the fact that injunction proceedings had been instituted would more likely cause plaintiffs to believe the effect of the strike had been averted than otherwise.

It is next alleged the stock was shipped under a written contract exempting defendant from liability for delay on account of strikes. This shipper's contract had no relation to counts one and three which were for delay in furnishing cars. It was entered into after the alleged delays and could apply only to counts two and four which were for delay in transporting the stock. [Baker v. Railroad, 145 Mo. App. l. c. 197, 129 S. W. 436.]

There is a further allegation stricken from defendant's special answer to counts one and three relative to failure of plaintiffs to give notice before removing any injured live stock from the car. There was but one cow injured. From reading the court's instruction and the jury's verdict on this count, it would appear that this matter was decided in defendant's favor. In any event, the defense was not good in answer to the counts for delay in furnishing cars. We find no error in the action of the trial court in this respect.

The principal and fourteenth contention made by defendant in this case, relates to the alleged error of the trial court in peremptorily instructing the jury that the strike referred to in evidence, known as the Shopmen's Strike, which went into effect July 1, 1922, constitutes no defense to the cause of action set up in any count of plaintiffs' petition.

The strike defense, pleaded in defendant's answer, raises the following questions, as applied to the evidence and the four counts of plaintiffs' petition.

1. In an action at common law on an interstate shipment, for damages caused by delay in furnishing cars within a reasonable time, after written notice by shipper as charged in count 1 of plaintiffs' petition, may an exist-ing strike of defendant's railroad shopmen be pleaded as an excuse in the absence of notice by defendant of its in-ability to so furnish said cars?

2. Is the same rule applicable to an intra-state ship-ment in Missouri, as set out in count 3 of plaintiffs' pe-tition?

3. In an action at common law on an interstate ship-ment for damages caused by an unreasonable delay in transporting live stock, as set out in count 2 of plaintiffs' petition, may an existing strike of defendant's railroad shopmen be pleaded as an excuse for such delay, the bill of lading containing a stipulation exempting defend-ant from liability for delay caused by strikes, stoppage of labor, etc., except in case of its negligence contributing thereto?

4. Is the same or a different rule applicable to an intra-state shipment in Missouri, as set out in count four of plaintiffs' petition?

As to the first and third propositions above set out, the claims being based on an interstate shipment, the laws of the United States and the common-law princi-ples adopted by our Federal Courts govern. [Morrow v. Wabash Ry. Co., 265 S. W. l. c. 855.]

As heretofore indicated this suit is based upon the common-law rights of plaintiffs and the common-law duties of defendant with respect to furnishing cars and transporting live stock. The common-law remedy is conceded to be available, notwithstanding the various statutes. [Southern Ry. Co. v. Moore, 133 G. A. 806, 67 S. E. 85, 26 L. R. A. 851 and note.]

Under the common law, common carriers are "bound to provide sufficient cars for transporting, without unreasonable delay, the usual and ordinary quantity of freight offered to them, or which might reasonably be expected." [4 R. C. L. 672.]

The Interstate Commerce Act, which is simply declarative of the common law on that point, provides, in respect to cars, that "it shall be the duty of every carrier, subject to the provisions of this Act, to provide and furnish such transportation upon reasonable request therefor." [41 Stat. L. 475.] This duty to furnish cars is not an absolute one. It has been held, in addition to storms, floods and other natural causes, that the carrier may be excused on account of unusual or extraordinary demand on the railroad in excess of its carrying capacity or beyond that reasonably to be anticipated. [Ocean Steamship Co. of Savannah v. Savannah Locomotive Works & Supply Co., 131 G. A. 831, 63 S. E. 577, 15 Ann. Cas. 1044, 20 L. R. A. 867; Ballentine v. North Mo. R. Co., 40 Mo. 491, 93 Am. 315; Howell v. Hines, 236 S. W. 887; Shoptaugh v. R. R. Co., 126 S. W. 752, 147 Mo. App. 8.]

The shopmen's strike pleaded as an excuse for delay in furnishing cars in this case, had been in existence approximately five months at the time plaintiffs ordered the cars. The requests for cars were in writing and accepted by defendant's agent at Phillipsburg. There was some evidence that defendant's superintendent of transportation, Mr. Daggerell, assured plaintiffs, prior to the time of this order, that their orders for stock cars would be taken care of. This was denied by Mr. Daggerell. Plaintiffs knew the strike had been in effect, but were not notified that defendant would be unable to furnish cars on that account. After requesting the cars on October 28th, for November 6, 1922, plaintiffs had their stock ready for shipment at Phillipsburg on that date. The car was not furnished, on the interstate shipment, until November 26th, and for twenty days plaintiffs were

compelled to feed and care for said cattle, awaiting the car. During that period, plaintiffs made several inquiries as to the furnishing of the cars. There is no evidence that defendant, at any time, informed plaintiffs of its inability to furnish the stock cars; the strike had been in existence for a long period of time; new men had been hired in large numbers to take the places of strikers, and live stock was being shipped to a greater extent than in the year 1921. The fact that plaintiffs knew of the existence of the strike would be no notice as to defendant's inability to furnish cars; they had a right to assume, in the absence of timely notice, that the cars would be furnished at the time requested and were justified in bringing their stock to defendant's station, on that date, for shipment. Under such circumstances, we are of the opinion that the strike defense, granting it to be a good excuse under other conditions, was not available to defendant as to counts one and three.

The necessity of notice to the shipper by the carrier of its inability to furnish cars on the date requested is well settled. "The law implies an agreement on the part of a railroad company to furnish necessary cars on a particular day when a proper request therefor has been made, . . . to excuse a carrier from liability for damages because of its failure to furnish cars as requested by a shipper, it must, if it has reason to anticipate its inability to do so, advise the shipper of that fact. [4 R. C. L. 678.] A similar rule is stated in 10 C. J. 74. To the same effect is: Eastern Ry. Co. of N. M. v. Littlefield, 237 U. S. 140, and Cronan v. Railroad, 149 Mo. App. 149, 130 S. W. 437; Ayres v. Chicago & N. W. R. Co., 71 Wis. 372, 37 N. W. 432.

A case involving this point, under almost identically the same state of facts, has been recently decided by the Kansas City Court of Appeals in Fewel v. St. Louis & S. F. Ry. Co., 267 S. W. 960. Judge Arnold very succinctly states defendant's case, as follows: "Defendant argues with apparent sincerity and earnestness, that, by

reason of the prior strike in the shops of defendant, it was short of men, and thereby unable to keep its equipment in repair, and therefore, it is not to be held liable to respond in damages for failure to furnish cars. No cases are cited in support of this argument. It is not claimed that there was, in fact, a strike in its shops on November 4, 1922, at the time the order was placed for the cars in question, but it is urged and was pleaded in the answer that there had been a strike, and that by reason thereof, defendant was without proper labor to keep its equipment in proper repair for service. There is no testimony of record to show plaintiffs were advised of this situation and so, under the rule above stated, the jury was warranted in holding defendant liable.''

In the Fewel case, supra, the strike plea was evidently submitted to the jury. In the case at bar, the peremptory instruction took away that defense. In view of the authorities above cited, as to counts one and three, we hold the peremptory instruction was properly given under the common-law rule, relative to furnishing cars, as adopted both by the Federal and our State courts.

In considering the third proposition above suggested, relative to delay in transportation of stock on the interstate shipment, it must be borne in mind that the stock was shipped from Phillipsburg, Missouri, to the National Stock Yards in East St. Louis, Illinois, under a shipper's contract. This contract, or bill of lading, provided among other things, that, ''except in cases of its negligence proximately contributing thereto, no carrier or party in possession of all, or any of the live stock, shall be liable for any loss thereto, or damage thereto, or delay caused by . . . riots, strikes, stoppage of labor or threatened violence.''

Plaintiffs strongly urge this provision is without consideration and therefore void. The strike was in existence at that time. A railroad company should not be required to do the impossible and if a situation had developed, without negligence on the part of defendant and which the defendant had reason to believe would

cause delay in transporting the live stock, it had a right to protect itself against such contingency, by contract; it could have refused to accept the shipment for failure to comply with a reasonable requirement in relation thereto, provided, of course, the then existing strike could be considered as cause for unavoidable delay. [Unionville Produce Co. v. Chicago B. & Q. R. Co., 168 Mo. App. 168, 153 S. W. 63; Russell Grain Co. v. Wabash R. Co., 114 Mo. App. 1. c. 496, 89 S. W. 908.]

It is further claimed that the so-called Carmack Amendment to the Interstate Commerce Act renders this stipulation unlawful and void. The Carmack Amendment makes the carrier liable to any person, entitled to recover on the bill of lading for the actual loss and damage to property transported, "not withstanding any limitation of liability . . . and any such limitation, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void." [38 Stat. L., page 1197.]

In construing this statute, the U. S. Supreme Court, in the case of Adams Express Company v. Croninger, 226 U. S. 491, in a unanimous opinion, rendered after the case had twice been argued, held as follows: "What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading, which its primary carrier is required to issue, for any loss, damage or injury to such property caused by it or by any connecting carrier to whom the goods are delivered. The suggestion that absolute liability exists for every loss, damage or injury from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage thereto, due to uncontrollable forces. That this was the intent of Congress is not conceivable. The liability it imposed is limited 'to any loss, injury or damage caused by it, or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common-law duty as a common carrier."

The court further held that "the rule of the common law did not limit its liability to loss and damage due to its own negligence or that of its servants. That rule went beyond this and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy, but the rigor of this liability, might be modified through any fair, reasonable and just agreement with the shipper, which did not include exemption against the negligence of the carrier or its servants."

Under the ruling in the Adams case, the carrier is not an insurer and, where the negligence of a connecting carrier is not involved, might exempt itself from liability, except for its own negligence, as at common-law. While the Interstate Commerce Act has been amended since the decision in the Adams Express Company case, by the first and second Cummins Amendments, 39 Stat. L. 441, we do not believe the effect of the decision was changed thereby.

If then, a carrier may limit its liability, under the Federal statutes, and the common law, for damages caused by unreasonable delay in transporting, except as to its own negligence, is an existing strike of defendant's railroad shopmen to be construed as such negligence on the part of defendant, which would render void the stipulation in the bill of lading in relation thereto? A similar question arose in the case of Jonesboro L. C. & E. R. Co. v. Maddy, 157 Ark. 484, 248 S. W. 911, 28 A. L. R. 498. There was involved an interstate shipment of hogs. The shipment should have reached its destination in two days, but as a matter of fact, never arrived at all. The delay or failure to deliver was caused by a switchmens' strike at the terminal. The bill of lading contained a provision by which the carrier was released from liability for delay in transporting caused by strikes. The Arkansas Supreme Court held, "the general rule is that the carrier is liable for the negligence of its servants during the course of their employment, and therefore, if its employees go on a strike, abandoning the per-

formance of their duty and causing delay in the transportation of goods, the carrier is liable," citing 10 C. J., art. 414, p. 293. The opinion further holds, after stating the Federal rule permitting a modification of the liability above defined, that "the carrier may, by fair and reasonable agreement restrict its liability for losses which are the proximate result of strikes on its own road, or that of its connecting carrier, where the loss is not occasioned by the negligence of the carrier in the premises, or the carrier could not by reasonable diligence have prevented the loss." It was also held that the question of defendant's negligence in that particular should have been left to the jury. The question of the carrier's liability for delay, or damages incident to delay, in transportation, due to strike is annotated under the reported case in 28 A. L. R., p. 503.

The Supreme Court of the United States seems never to have directly decided whether a strike of railroad employees is an act of negligence of the railroad company against which it could not contract. In the case of Pennsylvania R. R. Co. v. Olivit, 253 U. S. 574, the suit was for delay in transporting watermelons. The bill of lading contained a provision exempting the carrier from damages for delay in transportation caused by a strike. In writing the opinion reviewing the lower court's decision, the following is stated: "The court told the jury that defendant had proved a cause beyond its control, that is, a strike, and at the request of defendant, further instructed that if no negligence on defendant's part was shown, defendant was not liable and that the burden of proving such negligence was upon the plaintiff." The Supreme Court did not comment on this phase of the case, but evidently the instructions given by the lower court were not considered erroneous.

The strike clause in shipping contracts has been held to be valid in the following cases: Warren v. Portland Terminal Co., 116 At. 411; Hance Bros. v. American Ry. Ex. Co., 190 N. Y. Sup. 530; American Express Co. v. Johnson, 100 So. 743.

In so far as interstate shipments are concerned, we are of the opinion that a strike of a railroad's employees, which is set up as an excuse for delay under a stipulation in a shipper's contract exempting the railroad from liability on account of delay in transporting, is not, as a matter of law, negligence attributable to railroad company and that such stipulation, if made in good faith, is a valid one. The railroad company is bound, however, to exercise diligence to overcome the effect of the strike and may be liable for negligence in that respect. [American Fruit Distributors v. Hines, 203 Pac. 821; Warren et al. v. Portland Terminal Co., 116 Atl. 411.]

On this phase of the case, not to unduly prolong this opinion, it is sufficient to state that defendant produced evidence tending to prove the strike was unavoidable and that it endeavored to overcome the effect of the strike by hiring new men and attempting to induce the old employees to return and in other ways. Plaintiffs evidence contradicted this and tended to show the strike was brought about by defendant's efforts to reduce wages and that defendant could have overcome the effect of the strike by settlement, but would not deal with the strikers, as such, on any basis. The question was one for the jury on the second count of plaintiffs' petition and the trial court erred in giving the peremptory instruction as to the second count.

The further question remains as to the propriety of the peremptory instruction in relation to delay in transportation of stock on the intra-state shipment from Phillipsburg, to St. Louis, Missouri. The clause in the bill of lading exempting the carrier from liability on account of strikes, which was the same as in the interstate shipment heretofore set out, would seem to be ineffectual to protect defendant against liability, by reason of section 10018, Revised Statutes 1919, Laws 1911, p. 153. [Cravens v. Hines, 218 S. W. 914.] But under section 10449, Revised Statutes 1919, Laws 1913, p. 598, the carrier is liable only for damages *caused by it*, in transporting freight, and the burden of proving the delay was not

due to its negligence is placed on the defendant. This statute seems to be partly copied from the Federal law, which has been held not to make the carrier an insurer. In construing these statutes as to their effect on the common-law rights and liabilities of defendant, it is hardly conceivable. that the Legislature intended by section 10018 to make the carrier an absolute insurer. The carrier should not be required to do the impossible and where circumstances arise which prevent delivery within a reasonable time, the carrier should be enabled to limit its liability by contract, as at common law, with the burden of proving itself free of negligence, as provided in section 10449 and section 9926, Revised Statutes 1919. In the case of Morrison v. St. L. S. F. Ry. Co., 264 S. W. 449, decided by this court, the right of a carrier to stipulate against liability, is recognized. We hold, therefore, that under the provision referred to in the bill of lading, defendant had the right to show the delay was not caused by its negligence. This it attempted to do by proving the shopmen's strike. In the case of Read v. St. Louis, K. C. & N. R. R. Co., 60 Mo. l. c. 207, it is held that: "A company will be held responsible for damages resulting from a delay to transport freight in the usual time, when it is caused by its servants, suddenly and wrongfully refusing to work. Because the employees refuse to work or perform their usual employment, it will not release the company or the carrier from the responsibility of his contract. It may be his misfortune, but third persons are not to suffer thereby. His liability is all the same whether he could get others to supply their places or not." The Read case seems to hold to the theory that striking employees continue to be the servants of the carrier. That is not now the prevailing doctrine in the United States. The Read case, however, has never been overruled and we are bound thereby. But that case may be distinguished from the one at bar, in that in the Read case the strike was sudden and unexpected and purely local in character, while in the case at bar it was nation wide and had been in existence nearly five months at the

time in question. It would be unreasonable to hold that men out of defendant's employment for such a great length of time and on such a great scale, continued to be defendant's servants. The effect of the strike was not immediate, but was bound to continue for some time. Defendant, confronted with this condition, attempted to limit its liability by contract, as at common law. This suit is at common law, but defendant, under our statute, had the burden of proving the delay was not caused by its negligence. There was evidence offered showing the strike was nation wide; that practically all of defendant's 7000 shopmen, went out on July 1, 1922; that defendant was unable to fill their places; that by reason of the lack of skilled labor large numbers of defendant's locomotives and cars were out of repair on November 20, 1922, the date of the shipment; that the delay was caused largely by inability to get an engine out of the roundhouse at Newburg, as the result of lack of skilled labor. There was evidence on part of plaintiffs that defendant was responsible for the strike and could have avoided its consequences. We are of the opinion the evidence submitted would justify the submission of the strike defense to the jury as cause for the delay on the intra-state shipment. This disposes of the fourth point heretofore mentioned.

Defendant also complains of the failure of the trial court to sustain defendant's demurrer to the evidence as to each count in plaintiffs' petition. This point is not seriously pressed by defendant's counsel. There was substantial evidence to support plaintiffs case and the demurrers were properly overruled.

Defendant further assigns as error the giving of plaintiffs' instructions numbered 1, 2, 3, 4, 5, 6 and 7. No. 1, relates to the alleged delay in furnishing cars on the interstate shipment. It amounts, practically, to a directed verdict and fails to require proof of defendant's negligence. In view of the fact the whole defense and excuse for the delay, which is practically admitted, in furnishing cars, was based on the existing strike, which

defense we have held not available to defendant, absent timely notice, the giving of this instruction was not, for that reason, reversible error, notwithstanding the rule requiring plaintiffs to prove the delay was caused by defendant's negligence.

Instruction 1, is further assailed for incorrectly stating the measure of damages and assuming issuable facts. The instruction gives the measure of damages as such sum the jury might find the cattle declined in market value between the date said cattle would have been on the market if said car had been furnished as ordered and the date said cattle should have been delivered on the market by the defendant had they been promptly delivered when they were shipped. The rule on the measure of damages for delay in furnishing stock cars is stated in the Morrison case, supra, as ''the difference in the market price at the place of destination when the shipment should have arrived, and when it did arrive, plus the additional expense incurred because of the delay.'' The rule as set out in this instruction was therefore erroneous; the same would apply to plaintiffs' instructions No. 3 and 4. [Bennett v. Railroad, 151 Mo. App. 293, l. c. 298; 131 S. W. 770.]

The instruction is further subject to criticism in assuming the cattle were not promptly delivered, which was a fact to be proven under other counts in plaintiffs' petition. Plaintiffs' instruction 2, fails to require plaintiffs to prove defendant guilty of negligence on the interstate shipment. The principle is well recognized that plaintiffs must assume that burden on interstate shipments and failure to require the jury to so find, is error. [Mason v. Chicago & A. R. Co., 247 S. W. 243; Howell v. Davis, 236 S. W. 889; New Orleans & N. E. R. Co., 247 U. S. 367; Bland v. Ry. Co., 232 S. W. 232.]

In view of the fact we have held the stipulation in the bill of lading relative to limiting defendant's liability on the interstate shipment, on account of the strikes, is

valid, the instruction is further erroneous in ignoring the contract and making defendant an insurer

There are other errors complained of, which we believe are sufficiently disposed of by what has been stated.

The case is reversed and remanded for the errors assigned.

*Cox, P. J.,* and *Bradley, J.,* concur.